

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-10-1994

# United Steelworkers of Americ. v. Crown Cork & Seal Co., Inc.

Precedential or Non-Precedential:

Docket 93-2008, 93-7618

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"United Steelworkers of Americ. v. Crown Cork & Seal Co., Inc." (1994). *1994 Decisions.* Paper 107.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/107

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 93-2008 and 93-7613


UNITED STEELWORKERS OF AMERICA,
AFL-CIO-CLC

v.

CROWN CORK & SEAL CO., INC.

Appellant
(in No. 93-2008)


CHARLES A. THOMAS; DARREN BOOP; ROBERT W. BOWER;
WILLIAM D. BRIDGE; JAMES CLINGAN; NEAL B. HOUSNER;
JONATHAN L. NOAKER; WAYNE D. ORNER;
GERALD W. RANCK; HAROLD E. VAN SICKLE, JR.;
RICHARD A. WINTER; EUGENE L. WITMER, SR.,

Appellants
(in No. 93-7613)

v.

NORTH STAR STEEL COMPANY


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 92-cv-05968)

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 92-cv-01507)


Argued May 24, 1994
Before:  Cowen and Roth, <u>Circuit Judges</u>
Ackerman, <u>District Judge</u>*

(Filed August 10, 1994)

\*   Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

Alan D. Berkowitz (argued)
Dechert, Price & Rhoads
1717 Arch Street
4000 Bell Atlantic Tower
Philadelphia, PA  19103

    Counsel for Appellant (in No. 93-2008)
    Crown Cork & Seal Company, Inc.

David I. Goldman (argued)
United Steelworkers of America
5 Gateway Center
Pittsburgh, PA  15222

    Counsel for Appellee (in No. 93-2008)
    United Steelworkers of America,
    AFL-CIO-CLC

Robin S. Conrad
National Chambers Litigation Center
1615 H Street, N.W.
Washington, D.C.  20062

    Counsel for Amicus-appellant
    Chamber Commerce US
    (in No. 93-2008)

    Counsel for Amicus-appellee
    Chamber Commerce US
    (in No. 93-7613)

Paul A. Levy (argued)
Public Citizen Litigation Group
2000 P Street, N.W.
Suite 700
Washington, D.C.  20036

    Counsel for Appellants (in No. 93-7613)
    Charles A. Thomas
    Darren S. Boop
    Robert W. Bower
    William D. Bridge
    James Clingan
    Neal B. Housner
    Jonathan L. Noaker (whose name
    is misspelled in some pleadings as
    "Nooker")
    Wayne D. Orner
    Gerald W. Ranck
    Harold E. Van Sickle, Jr.

Richard A. Winter
Eugene L. Witmer, Sr.
Vincent Candiello (argued)
Morgan, Lewis & Bockius
417 Walnut Street
One Commerce Square
Harrisburg, PA  17101

Counsel for Appellee (in No. 93-7613)
North Star Steel Co., Inc.

Joseph S. Hornack
Cynthia s. Akers
Healey, Davidson & Hornack
Law & Finance Building
5th Floor
Pittsburgh, PA  15219

Counsel for Amicus-appellants (in No. 93-7613)

Oil, Chemical and Atomic Workers
International Union, AFL-CIO

United Mine Workers of America,
International Union

NLG/Sugar Law Center for
Economic & Social Justice

International Union, United Automobile,
Aerospace & Agricultural Implement
Workers of America, UAW

**OPINION**

ACKERMAN, <u>District</u> <u>Judge</u>.


These two cases present the following discrete issue: In an
action brought pursuant to the  Worker Adjustment and Retraining
Notification Act, 29 U.S.C. §2101 et seq. ("WARN"), a statute
which, like so many others, fails to explicitly provide a statute
of limitations, should we follow the general rule and borrow a

state statute of limitations or should we instead opt for the six-month statute of limitations set forth in section 10(b) of the federal National Labor Relations Act. The two cases present the identical issue for review and we will consider both cases in this Opinion.

For the reasons detailed below, we find that for cases arising under WARN, courts should apply the most closely analogous state statute of limitations. Thus, we will reverse the decision in <u>Thomas v. North Star Steel</u> and will affirm the decision in <u>United Steelworkers of America v. Crown, Cork & Seal</u>.

## Background

Both of the underlying cases were filed pursuant to WARN, a federal statute which requires companies with one hundred or more employees to provide their workers with a minimum of sixty days written notice before a plant closing or mass layoff.[1] Employers who fail to provide the requisite notice must compensate employees suffering an employment loss for each day of the violation. The statute creates a private civil action for damages in federal court.

---

[1] The statute defines "plant closing" as the permanent or temporary shutdown of a single site of employment, which results in an employment loss to a certain minimum number of employees. 29 U.S.C. §2101(a)(2). "Mass layoff" is defined as a reduction-in-force, resulting from a plant closing, which results in a certain minimum employment loss. 29 U.S.C. §2101(a)(3). A layoff must last more than six months before it qualifies as actionable under WARN. 29 U.S.C. §2101(a)(6)(B).

On September 9, 1991, the United Steelworkers of America, AFL-CIO-CLC, filed a complaint in federal court alleging that the North Star Steel Company ("North Star") had violated the WARN Act by failing to give the union sixty days advance notice of a February 25, 1991 layoff of about 270 people, at the company's Milton, Pennsylvania plant. Although the suit was filed more than six months after the layoff occurred, North Star did not raise the statute of limitations as a defense. On April 9, 1992, the district court granted the union's motion for summary judgment on liability, holding that the layoff constituted a "plant closing" subject to WARN. In a separate Order, dated December 11, 1992, the district judge determined the number of days for which the company was required to pay WARN damages. United Steelworkers v. North Star Steel, 809 F. Supp. 5, 6-7 (M.D.Pa. 1992), aff'd 5 F.3d 39 (1993).

Appellants were non-unionized employees of North Star, unrepresented by the union and hence unaffected by the union's successful lawsuit against North Star. They therefore filed a separate action, the instant case, also seeking damages pursuant to WARN. On May 25, 1993, the district court granted North Star's motion for summary judgment, finding that the action was barred under what it deemed to be the applicable statute of limitations. The employees' motion for reconsideration was denied on August 26, 1993. This appeal followed.

United Steelworkers of America v. Crown Cork & Seal Co., Inc. ("Crown Cork"), arises out of an event that took place on September 30, 1991. On that day, the company ordered a

reduction-in-force and shutdown of its Perry, Georgia plant. As a result of this reduction in force, about 85 employees were terminated. On October 15, 1992, the United Steelworkers of America (the union) filed a complaint, alleging that the company violated WARN by failing to give it 60 days notice prior to the shutdown. Crown, Cork & Seal then moved for summary judgment, contending that the action was barred by the applicable statute of limitations. The district court denied the motion on August 24, 1993 but in an order dated September 26, 1993, certified the August order for immediate interlocutory appeal pursuant to 28 U.S.C. §1292.

We have jurisdiction over the appeal in Thomas v. North Star Steel pursuant to 28 U.S.C. §1291. Our jurisdiction over United Steelworkers of America v. Crown, Cork & Seal arises from our October 13, 1993 Order granting the company permission to appeal pursuant to 28 U.S.C. §1292(b). Our review over both cases is plenary.


## Discussion

In this case we visit a general question of federal law that we have repeatedly addressed: When a federal statute does not contain an explicit statute of limitations, when is it appropriate to borrow a statute of limitations from elsewhere in federal law rather than adopting the most closely analogous state statute of limitations.

The companies argue that in this case, a federal statute -- the six-month statute of limitations contained in section 10(b)

of the National Labor Relations Act ("NLRA") for filing a claim of an unfair labor practice with the National Labor Relations Board ("NLRB") -- provides the most appropriate limitations period. The employees and the union exhort us to borrow one of various state statutes. Courts addressing the question have adopted both approaches. Some have borrowed the six-month §10(b) statute; see, e.g., Newspaper and Mail Delivers' Union of N.Y. and Vicinity v. United Magazine Co., 809 F. Supp. 185 (E.D.N.Y. 1992) (adopting NLRA statute); Staudt v. Glastron, Inc., No. SA-92-CA-1174, 1993 WL 85356, 1993 U.S. Dist. LEXIS 3090 (W.D.Tex. February 23, 1993) (same). Other courts, including the only Court of Appeals to reach the question, have expressly considered and rejected the section 10(b) six-month period, instead opting for various state law limitations periods. See, e.g. United Paperworkers Local 340 v. Specialty Paperboard, Inc., 999 F.2d 51 (2d Cir. 1992) (hereinafter United Paperworkers); Wallace v. Detroit Coke Corp., 818 F. Supp. 192 (E.D. Mich. 1993) (rejecting NLRA statute and adopting six-year state contract statute); Automobile Mechanics' Local No. 701 of the Int'l Assoc. of Machinists & Aerospace Workers v. Santa Fe Terminal Services, Inc., 830 F. Supp. 432 (N.D. Ill. 1993) (rejecting NLRA statute and adopting, without specifying, most analogous state statute).

The two district court opinions before us now reached contrary conclusions. The district court in North Star Steel adopted the six-month statute of limitations set forth in §10(b); the court in Crown, Cork & Seal rejected the §10(b) statute, and

without deciding the appropriate statute of limitations, found the action timely under all of the possibilities.

Our analysis must begin with the general assumption that when a federal statute is silent as to a statute of limitations, the court should apply "the most closely analogous statute of limitations under state law."  DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 158 (1983); see also Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, ____, 111 S.Ct. 2773, 2778 (1991); Haggerty v. USAIR, Inc., 952 F.2d 781, 783 (3d Cir. 1992).  This general rule is not set in stone, however.  Rather, the United States Supreme Court has recognized that, in order to prevent frustration of federal policy, it is sometimes more appropriate to borrow a limitations period from an analogous area of federal law.  DelCostello, 462 U.S. at 162.  This exception is "closely circumscribed", see Reed v. United Transp. Union, 488 U.S. 319, 324 (1989), and should only be applied "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking".  DelCostello, 462 U.S. at 172.

In following the principles enunciated in DelCostello and Reed, we repeatedly have recognized our duty "to take seriously [the Supreme Court's admonition] that analogous state statutes of limitations are to be used unless they frustrate or significantly interfere with federal policies." Reed, 488 U.S. at 327.  For

instance, the mere fact that a statute touches upon issues of labor law does not mean that the Court must resort to the statute of limitations contained in §10(b) of the NLRA. Thus, in Eichleay Corp. v. Intern. Ass'n of Bridge, Structural and Ornamental Iron Workers, 944 F.2d 1047 (3d Cir. 1991), we applied a state statute of limitations for vacating arbitration awards to an action to enforce an arbitration awards pursuant to §301 of the Labor Management Relations Act, 29 U.S.C. §185. Similarly, in Brenner v. Local 514, United Brothers of Carpenters, 927 F.2d 1283 (3d Cir. 1991), we remanded the case to the district court to apply the most closely analogous state statute of limitations to a §301 claim of retaliation against internal union activities. In Grasty v. Amalgamated Clothing & Textile Workers Union, 828 F.2d 123 (3d Cir. 1987), cert. denied, 484 U.S. 1042 (1988), we applied Pennsylvania's four-year breach of contract statute of limitations to a union member's claim that the union failed to rebate dues and improperly charged disabled workers. In this case, as in those, the federal statute may be borrowed only if it clearly provides a closer analogy than the available state statutes. Answering this question requires us to focus on the respective policies behind the NLRA and WARN.

The primary purpose of the NLRA is "to protect the right of workers to join together in labor organizations and collectively bargain for the terms and conditions of employment." United Paperworkers, 999 F.2d at 54; see also Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 20-21 (1987). The statute "is concerned with ensuring an equitable bargaining process, not with

the substantive terms that may emerge from such bargaining." Fort Halifax, 482 U.S. at 20 (citing Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724 (1985)). More specifically, as the Supreme Court noted in Reed, the NLRA has "effects upon the formation and operation of the collective-bargaining agreement between the employer and the bargaining representative, and upon the private settlement of disputes under that agreement through grievance-and-arbitration procedures". Reed, 488 U.S. at 329. The NLRA, then, is concerned with the importance and integrity of a process. From the NLRA's perspective, "minimum terms of employment" that may arise from another federal statute -- or from the process of collective bargaining itself -- are irrelevant so long as the process is fair.

The six-month statute of limitations set forth in §10(b) represents Congress's view of the proper balancing of the various interests involved in the process of collective bargaining. The six-month period takes into account "the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system." DelCostello, 462 U.S. at 171 (quoting United Parcel Service, Inc. v. Mitchell, 451 U.S. at 70-71 (1980) (opinion concurring in the judgment)). In DelCostello itself, it was precisely this direct effect on the collective bargaining process that led the Court to invoke the §10(b) statute of limitations. That case involved a §301 hybrid suit (1) against an employer for breach of a collective bargaining agreement pursuant to the

LMRDA, and (2) against a labor union for breach of the duty of fair representation. Such a hybrid action really alleges that the process of collective bargaining has broken down. Thus, the NLRA policies applied: "The employee's interest in setting aside the 'final and binding' determination of a grievance through the method established by the collective-bargaining agreement unquestionably implicates 'those consensual processes that federal labor law is chiefly designed to promote -- the formation of the . . . agreement and the private settlement of disputes under it.'" DelCostello, 462 U.S. at 171 (quoting Mitchell, 451 U.S. at 70-71 (opinion concurring in judgment)).

In DelCostello, the parallels between the cause of action and the policies behind the NLRA were unmistakable. In Reed, however, the Supreme Court, while acknowledging that many employment-related statutes affecting labor will in some way affect the collective bargaining process, cautioned that even plausible "tangential and remote" effects upon collective bargaining are insufficient to warrant departure from the general rule. Reed, 488 U.S. at 330, 331. Thus, the Court refused to borrow the §10(b) NLRA statute of limitations to govern a union member's free speech claim against the union.

WARN falls into this latter category -- any effects it has on collective bargaining are tangential at best. The benefits of WARN accrue not only to unionized workers but to all workers alike. WARN, like dozens of other employment statutes which bestow substantive rights simply "gives employees something for which they otherwise might have to bargain." Fort Halifax, 482

U.S. at 21 (addressing Maine plant closing law). That is why in that case, the Supreme Court held that the NLRA did not preempt a Maine statute providing protection to workers from plant closings. Unlike the NLRA, the Maine regulation "provide[d] protection to individual union and nonunion workers alike, and thus 'neither encourage[d] nor discourage[d] the collective bargaining processes . . . ." Fort Halifax, 482 U.S. at 21 (quoting Metropolitan Life, 471 U.S. at 755). The WARN protections, like the Maine plant closing law discussed in Fort Halifax, is also properly understood as establishing part of the "backdrop" of rights that the parties bring to the collective bargaining table, and not as affecting the substantive rights that may emerge from the collective bargaining discussions. Fort Halifax, 482 U.S. at 21.

WARN serves a broader purpose as well, that goes beyond the employer-employee relationship addressed by the NLRA. The statute mandates that employers planning a plant closing or mass lay-off must notify the "chief elected official of the unit of local government within which such closing or layoff is to occur". 29 U.S.C. §2102(a)(2) Employers who fail to comply with the provision are subject to civil penalties of $500 per day. 29 U.S.C. §2104(a)(3). Thus, WARN serves very broad societal goals -- to protect workers, their families and their communities in the wake of potentially harmful employment decisions. Its remedial nature really has very little to do with the day to day process of collective bargaining.

To be sure, it cannot be said that WARN has no effect on collective bargaining. The companies point out, for example, that under the NLRA, an employer must provide notice to represented workers, in order to give the workers the opportunity for meaningful bargaining. See, e.g. First National Maintenance Corp. v. NLRB, 452 U.S. 666, 681 (1981). This fact does present a superficial resemblance between the NLRA and WARN, but on closer inspection, it highlights the difference. The rights bestowed by the NLRA focus solely on the need for a meaningful collective bargaining process; WARN provides an across-the-board substantive right. The implementing regulations of the statute highlight this crucial distinction by providing that "[c]ollective bargaining agreements may be used to clarify or [to] amplify the terms and conditions of WARN, but may not reduce WARN rights." 20 C.F.R. §639.1(g) (emphasis added). In other words, the NLRA requires notice to protect the meaningfulness of the collective-bargaining process; WARN's purpose is to substantively protect employees and their communities.

The fact that courts have looked to NLRA cases in interpreting WARN, and the fact that there are some definitional overlaps, does not change this fundamental distinction between the two statutes. At best, WARN has a family resemblance to the NLRA. In Brenner v. Local 514, United Brothers of Carpenters, 927 F.2d 1283 (3d Cir. 1991), we rejected the proposition that a family resemblance is sufficient to justify adopting the §10(b) statute of limitations. There, we held that a claim against a union for breach of the duty of fair representation, while having

some effect upon the collective bargaining atmosphere, did not
have an effect sufficient enough to counsel adoption of the
federal statute. Id. at 1295. In order to justify departing from
the general rule, the analogy must be more direct.[2]

As the Second Circuit pointed out in United Paperworkers,
courts adopting the section 10(b) statute of limitations for WARN
actions "have failed to grasp this crucial distinction between
statutes which specifically regulate the collective bargaining
relationship and those which remain peripheral to that concern."
United Paperworkers, 999 F.2d at 55.

Nonetheless, despite the vast gulf between the respective
policies behind the NLRA and WARN, the companies look for relief
in our own prior decision of Haggerty v. USAir. Their reliance
is misplaced. That case addressed the Employee Protection
Program of the Airline Deregulation Act, 49 U.S.C. §1552(d)(1)
(1988) ("EPP"), a federal statute which provided certain air
carrier employees with a right of first hire against other air
carriers. The EPP directly affected the collective bargaining
environment by impacting on "the seniority relationships of other

_____

[2] The lack of similarity between the NLRA and WARN becomes
even starker when one looks at the remedies afforded by the
respective statutes. Under the NLRA, the National Labor
Relations Board has broad discretion to "'take such affirmative
action including reinstatement of employees . . . as will
effectuate the policies of [the Act]' to remedy an employer's
unfair labor practices." Tubari Ltd., Inc. v. NLRB, 959 F.2d
451, 453 (3d Cir. 1992). WARN by its very terms precludes such
broad equitable relief; "[A] Federal court shall not have
authority to enjoin a plant closing or mass layoff." (emphasis
added). Similarly, the NLRB's discretion in awarding back pay is
broad. See Tubari, 959 F.2d at 453. WARN, though, provides a
strict statutory mechanism for computing damages.

employees . . . ." Haggerty, 952 F.2d at 787. As in
DelCostello, this direct impact on the collective bargaining
environment required a statute of limitations that furthered the
need for the rapid resolution of labor disputes. And since, as
we noted in Haggerty itself, the airline industry was nearly 90%
unionized and the right-to-hire program was inserted into the
statute at the insistence of unions, the six-month section 10(b)
statute of limitations was the obvious choice.[3]

In determining whether to apply a federal statute of
limitations, we also have considered whether the federal policies
at stake and the practicalities of litigation make the NLRA
statute "a significantly more appropriate vehicle for
interstitial lawmaking". DelCostello, 462 U.S. at 172; Haggerty,
952 F.2d at 786. The companies argue that WARN requires a single
federal statute of limitations, because subjecting the companies
to multiple state statutes of limitations would make it difficult
for employers to calculate their contingent liabilities.

This case simply does not present serious uniformity
concerns. The need for uniformity becomes real only when the
federal statute at issue contains numerous types of claims and
legal theories or when the prospect of multiple state statutes of
limitation presents serious practical problems. Uniformity
concerns motivated the Supreme Court in Wilson v. Garcia, 471

---

[3] We also found that "as with the NLRA, the Department of
Labor has had a role in administering the EPP as the agency
charged with maintaining a listing of airline vacancies for the
use of protected employees under the EPP." Haggerty, 952 F.2d at
787.

U.S. 261 (1985), to apply a uniform limitations period (a state limitations period in that case) to claims arising under 42 U.S.C. §1983. As the Court pointed out, claims under the broad civil rights statute "would encompass numerous and diverse topics and subtopics." Wilson, 471 U.S. at 273. Thus, "[i]f the choice of the statute of limitations were to depend upon the particular facts or the precise legal theory of each claim, counsel could almost always argue, with considerable force, that two or more periods of limitations should apply to each §1983 claim." Id. at 273-74. The Court used similar reasoning in Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143 (1987): Since RICO "encompass[es] numerous diverse topics and subtopics . . . a uniform statute of limitations is required to avoid intolerable 'uncertainty and time-consuming litigation.'" Id. at 149-50 (quoting Wilson, 471 U.S. at 273, 272).

In Haggerty, we relied on uniformity concerns in deciding to apply the section 10(b) statute. Under the EPP, a protected employee who had been terminated or furloughed could claim a right of first hire with any other carrier that was hiring employees. We noted that airline carriers would have difficulty "managing a cohesive policy with respect to the EPP were they subject to the varying limitations periods of each of the states in which they operate." Haggerty, 952 F.2d at 786. Thus, without a uniform federal statute of limitations, the entire airline industry faced constant and protracted uncertainty.

Unlike RICO and Section 1983, WARN contains but a single cause of action, and all WARN claims involve nearly identical

fact patterns and discrete inquiries.  And unlike the EPP, under

which an airline may be the fortuitous victim of events involving

other air carriers all across the country, WARN's obligations

simply do not implicate such geographic concerns favoring

uniformity.  As the Second Circuit put it:

> "The term 'plant closing' as defined by the Act is limited
> to single sites of employment, and venue is limited to the
> district where the violation is alleged to have occurred or
> where the employer does business; unless a single plant site
> straddles the boundary between two states, it is unlikely
> prospective plaintiffs will have a broad choice of fora in
> which to bring their claims or that doubt will arise as to
> in which state triggering events occurred.  Therefore,
> geographic considerations do not counsel for the application
> of a uniform federal limitations period for WARN Act
> claims."  United Paperworkers, 999 F.2d at 56 (quoting
> district court opinion).

Because of these same factors, "courts will have little

difficulty in determining which state's law to apply and workers

will gain few advantages by suing in a court far from the site of

injury."  United Paperworkers, 999 F.2d at 56.[4]

---

[4] Since the Crown, Cork & Seal action occurred in Perry, Georgia, there is a question as to whether the statute of limitations should be borrowed from Georgia or Pennsylvania law. We have previously held that "as a general rule the governing statute of limitations should be that of the state in which the federal court sits, unless a party can make a compelling showing that the application of that statutory time bar would seriously frustrate federal labor policy or work severe hardship to the litigants." Consolidated Express, Inc. v. New York Shipping Association, Inc., 602 F.2d 494, 507-08 (3d Cir. 1979), vacated on other grounds, 448 U.S. 902 (1980).  We need not decide whether the statute of limitations should be borrowed from Pennsylvania or Georgia law, since no party has brought to the lower courts' attention a statute of limitations, from either state, under which the instant actions would be untimely.

The companies' further concern about the effect of a plant closing on service of process, and on the mechanics of litigation, simply do not implicate federal concerns; rather, they are the same concerns at issue in every cause of action, whenever the statute of limitations is longer then a year or so.

On the other hand, a short statute of limitations could very well frustrate the policies behind WARN. As the Second Circuit found, under the complex administrative scheme of the NLRA, in which the NLRB plays a large and active role in prosecuting claims, "[t]he burden on complainants in pursuing a claim is minimal, justifying the short statute of limitations." United Paperworkers, 999 F.2d at 55. WARN does not contain those administrative safeguards, and a six-month statute could very well constitute too great a burden on the claimants.

Finally, cases finding that the practicalities of litigation favor adoption of a federal statute of limitations have focused on the problems with the potential state statutes. For example, in DelCostello, the Court pointed out that the two possible state statutes were inconsistent with the relevant federal policy favoring the finality of settlements and the opportunity to attack an unfair result under collective bargaining. The extremely short time periods in state arbitration statutes "fail to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights under §301 and the fair representation doctrine." Id. at 166. Conversely, the relatively lengthy time period governing legal malpractice claims "would preclude the relatively rapid final resolution of labor disputes favored by

federal law -- a problem not present when a party to a commercial arbitration sues his lawyer."  Id. at 168.

Here, the state statutes of limitations brought to the lower courts' attention -- which range from the two-year period for enforcing civil penalties under 42 Pa. Cons. Stat. Ann. §5524(5) to Pennsylvania's six-year residual statute of limitations, 42 Pa. Cons. Stat. Ann. §5527 --  do not interfere with federal policy.[5]  Because of WARN's remedial nature and its limited effect on collective bargaining, a short statute of limitations is unnecessary.  And none of the state statutes are so short as to interfere with a worker's potential for seeking or gaining relief.  While we acknowledge that none of the possible state laws provide perfect analogies to WARN, the absence of a perfect analogy is an insufficient reason to depart from the general rule, particularly when federal law does not provide a satisfactory alternative. See, e.g., DelCostello, 462 U.S. at 171; Gavalik v. Continental Can Co., 812 F.2d 834, 847 (3d Cir. 1987).

Here, we need not decide which state statute applies, since the actions would be timely under any of the possible statutes of limitations brought to the court's attention.


CONCLUSION

---

[5] Other possible state statutes of limitations include the three year period set forth in 43 Pa. Stat. Ann. §260.9a(g) for bringing claims under the Pennsylvania Wage Payment and Collection Law, and the four year limitations period for breach of an implied contract, 42 Pa. Cons. Stat. Ann. §5525(4).

    We conclude that, for the reasons detailed above, for actions arising under WARN, courts must apply the most closely analogous state statute of limitations.  We therefore will affirm the district court's Order in United Steelworkers of America v. Crown, Cork & Seal denying Crown, Cork & Seal's motion for summary judgment.  We will reverse the Order of the district court in Thomas v. North Star Steel granting North Star's motion for summary judgment in favor of North Star.  These cases will be remanded to the respective district courts for further proceedings consistent with this opinion.  Costs taxed against the appellant in 93-2008.  Costs taxed against the appellee in 93-7613.