WISDOM, Circuit Judge,
dissenting.
This is a difficult case. Reasonable minds can disagree on the proper outcome. To my mind, however, the United States Supreme Court has provided a framework whose strictures dictate the result. Because I find the majority’s diligent attempt to escape that outcome unconvincing, I respectfully dissent.
I.
The issue presented, as correctly framed by the majority, is whether the district court erred in applying the six-month statute of limitations from § 10(b) of the National Labor Relations Act (NLRA)[1] to the plaintiffs’ claims under the Worker Adjustment and Retraining Notification Act (WARN).[2] This is not only a question of first impression in this Circuit, we are the only Court of Appeals to consider applying the NLRA’s statute of limitations to non-unionized WARN plaintiffs.[3] The majority reluctantly parts ways with the Second and Third Circuits on this question and holds that the NLRA six-month limitations applies to WARN.[4] I believe that our sister circuits got it right.
I agree with the majority that this case presents a “classic example” of “which round peg to stuff in a square hole”. All three consolidated appeals focus on the same task: We must fill in a blank left by Congress, namely, what statute of limitations applies to cases brought under the WARN? Whenever courts are left to a task of this nature, they become part sleuth, part improvisor. The truth is, we do not know what Congress would have preferred and, so, are left with our best guess as to what would most closely approach congressional intent — if it had an intent on the subject.
II.
The starting point in resolving the present issue is the recent Supreme Court decision in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson.[5] In that case, the Court held that, when Congress creates a federal cause of action but does not include a statute of limitations, the courts are to presume that Congress intended for the analogous state statute of limitations to apply.[6] The Supreme Court summarized this general rule as follows:
It is the usual rule that when Congress has failed to provide a statute of limitations for a federal cause of action, a court “borrows” or “absorbs” the local time limitation most analogous to the case at hand....
This rule is founded on the Rules of Decision Act which “has enjoyed sufficient longevity that we may assume that, in enacting remedial legislation, Congress ordinarily intends by its silence that we borrow state law.”[7]
*242 This general rule is subject to a limited exception. If a state statute of limitations would be “at odds with the purpose or operation of federal substantive law”, the courts should ignore the state limitations period and instead borrow the most analogous federal limitations period.[8] This exception, however, remains that; it is “a closely circumscribed exception” to the general rule that state, not federal, limitations periods apply when Congress fails to specify a limitations period for a federal cause of action.[9]
Moreover, it is important to underscore that this exception applies only when the state statute of limitations would “frustrate” the policies of WARN.[10] This approach to the exception makes sense for, as the Del-Costello Court explained, it would be “inappropriate to conclude that Congress would choose to adopt state rules at odds with the purpose or operation of federal substantive law”.[11] Unfortunately, the majority’s decision deviates dramatically from this established framework.
The language in Lampf pronouncing the state borrowing rule alive and well did not command “only a plurality”, as the majority and General Dynamics would have us believe.[12] In fact, a simple head count proves the opposite. Four Justices joined in part II.A of the Court’s opinion from which the quoted rule comes. The remaining Justices took positions even more hostile to General Dynamics’s position than Justice Blackmun’s plurality opinion.[13] The Court actually was unanimous in Lampf in expressing the view that state statutes of limitation generally govern if Congress attaches no limitations period to a federal cause of action.
III.
Lampf and DelCostello create a flow chart inquiry. We always look to the state statute of limitations first to see if an analogous state law exists.[14] The majority’s explanation of the Lampf “hierarchy,” however, places the choice between a federal and state statute on par with one another, both subject to the criteria of which provides the best fit in the light of forum shopping concerns and the geographic character of the claim.
That is not Lampf’s teaching. The hierarchy is vertical; Lampf is clear that state statutes of limitations are the rule, federal rules the exception. Courts do not make a simple choice between the federal and state rules. If an analogous state statute of limita *243 tions is found, it should be used, provided it is not at odds with the federal substantive law.[15] This approach embodies the “presumption of state borrowing”.[16] In fact, Lampf suggests that the only time a court can go straight to federal law is “where Congress has provided an express limitations period for correlative remedies within the same enactment”.[17] While that was precisely the case in Lampf, it has nothing to do with the case at hand.
The majority’s inverted approach is evidenced by its starting point: “We first examine whether the NLRA limitations period is more analogous to WARN than available state periods”.[18] That is not the proper first step and dangerously misplaces the proper emphasis. Instead, Lampf requires that we first select the most analogous state period and determine whether it is at odds with the federal substantive law. Hence, the majority’s next statement that it will “describe the similarities between the NLRA and WARN, and then compare and contrast those similarities with the available state period(s)” is a task improperly undertaken.[19]
IV.
Even taken on its own terms, however, the majority’s opinion cannot stand. The district courts relied on the mistaken impression that WARN causes of action are analogous to lawsuits brought under the NLRA and, accordingly, within the exception laid down in DelCostello. The majority reiterates that assertion by painting the NLRA and WARN as statutes with similar purposes and structures. I disagree.
This case boils down to the length of time in which a plaintiff may file suit. The main policy reason advanced by the district courts for the restrictive six-month limit was the national interest in the quick resolution of labor disputes.[20] Unlike the NLRA, however, nothing in the cause of action created by WARN requires or counsels in favor of an accelerated resolution. Without explanation, the majority adopts the shaky premise that the policy favoring the rapid resolution of labor disputes (presumably so that everyone can get back to business) applies to a situation where the company has closed a plant (and there will be no more business).[21]
*244 This is where the majority’s statement that the statutes bear a “family resemblance” breaks down. Even a cursory analysis reveals the purposes of these statutes to be markedly different. The reason for preferring rapid resolution of an ordinary labor dispute is that when the dispute is resolved, employees will go back to work, production will, resume, the employer’s sales will increase, and the positive effects of the business on the overall economy will return. Because strikes disrupt the status quo and hurt the economy, it is important to minimize the economic damage to the company and the community by ending them swiftly. Understandably, the NLRA sets a comparatively short limitations period (six months) as a means of achieving these goals.
Those considerations, unfortunately, have no place in a scenario where WARN comes into play. When a WARN dispute is resolved, the plant stays closed. Employees fired en masse stay fired. Production does not resume. The economy does not return to the status quo ante. Plant closings hurt the economy, but once the closing occurs, the damage is done. Resolution of any resulting WARN Act claims will not remedy that harm. In sum, there is no reason to require that they be rushed to resolution within six months or not at all.
The Second Circuit recognized this fundamental distinction: “The purpose of WARN, unlike that of the NLRA, is not to ensure labor peace but to alleviate the distress asso-dated with job loss for both the workers and the community in which they live”.[22] No reason to expedite those claims beyond what the state prescribes for the most analogous state limitations period exists. It is important to understand that this alleviation of distress comes from the advance notice of the plant closing, not from the backpay award that comes when a company fails to comply with WARN’s provisions.[23] Moreover, we must remember that a plaintiff is not paid the day he files suit. If he wins at trial and upon appeal, his backpay award could be years away. The majority’s decision will compound — not dissipate — the distress that thousands of workers experience annually.
The most severe aspect of the majority’s holding is its decision to subject the non-unionized employees in this case to the strictures of the NLRA, the act governing collective bargaining.[24] Returning to the round peg, square hole metaphor, this truly baffles the laws of geometry. The NLRA protects the right to bargain collectively but exacts as a price for that protection that disputed cases be filed within six months. Yet, in this case, the majority holds the plaintiffs to a deal they did not make: They suffer the six-month requirement but benefit from no corresponding protection of their rights.[25]
The Supreme Court has drawn an important distinction between statutes that involve the collective bargaining process and those that do not.[26] For example, in DelCostello, the Supreme Court stated that it would borrow a federal limitations period because of the national concern for “stable bargaining relationships and finality of private settle *245 ments”.[27] The Reed case is equally illustrative. The statute at issue there did not directly touch on collective bargaining concerns and so the Supreme Court applied the usual state limitations period.[28] This distinction is well-founded, for a plant closing law “provides protection to individual union and non-union workers alike, and thus neither encourages nor discourages the collective bargaining processes that are the subject of the NLRA”.[29]
The unfairness of applying the NLRA’s limitations period to non-unionized workers is magnified by the practical obstacles that WARN plaintiffs face. Unionized plaintiffs presumably enjoy the benefit of union protection and, probably, union legal representation. The union .will be well-versed in the applicable statute of limitations for claims of that sort and the plaintiffs will be advised accordingly. In other words, unionized WARN plaintiffs can rest assured that the union “will handle it”.
Non-unionized WARN plaintiffs, on the other hand, are unlikely to have sufficient information to be able to bring suit within six months.[30] Whereas unions are readily able to determine whether a sufficient number of their members have lost their jobs to invoke WARN’s remedies, non-union employees must learn about the scope of a layoff by talking to co-workers and gradually compiling a list of those affected. This will be a time-consuming laborious undertaking.[31]
But workers will hardly be able to direct the energy and attention necessary to that task — they will be out hunting for work. NLRA plaintiffs are preoccupied with going back to their jobs with their company; WARN plaintiffs are preoccupied with finding a new job to replace the one they just lost. The strain they are under will be intense as they will be competing with the perhaps thousands of others similarly situated for any scarce employment opportunities. In spite of this all-too-real scenario, the decision of the Court today requires that they file suit within six months to get the backpay to which they are entitled, knowing that the ultimate award if they win will be far away and ineffective to help with their present needs.
Athough the equities seem to me plain, this distinction goes beyond a question of fairness, it is the core of our analysis. For when the purpose of the NLRA is at odds with the purpose of WARN, there is no way that the NLRA can provide a “closer fit” than an analogous state statute of limitations.
Not only is there no strict identity of purposes as the majority reminds us is unnecessary, these are fundamentally different statutes, enacted for very different reasons, creating very different causes of action.[32] The purpose of WARN is to give employees advance notice of plant closings and a cause of action when the employer fails to comply. The imposition of the NLRA statute of limitations is at odds with that purpose in that it unduly burdens potential WARN plaintiffs by making them pursue those actions within a very tight time frame.
Comparing these statutes to the securities law at issue in La/mpf, where the Court did adopt a uniform federal limitations period, is *246 instructive. In Lampf, the Court was able to borrow the federal limitations period from the remedial provisions passed by the same Congress for the same purpose. Hence, the Court’s task was, in many ways, easier. Both the borrowed period and Rule 10(b) were “to protect investors against manipulation of stock prices through regulation of transactions upon securities exchanges....” In Lampf the Court’s borrowed period had a near-identity of purpose with Rule 10(b); we do not.
The majority opinion is no more convincing as to structure. The majority incants the WARN regulations that the Department of Labor borrowed from the NLRA, but fails to explain the significance of that comparison. The borrowing of concepts is understandable: both laws operate within the larger context of employer-employee relations. The Department of Labor is the natural oversight agency for both and the case law applicable to the interpretation of one will likely be useful in construing the other. Still, that they were born into the same extended family does not mean that they bear a family resemblance.[33]
In conclusion, I would join the other Courts of Appeals to have considered this issue — the Second Circuit in United Paper-workers and the Third Circuit in Crown Cork & Seal — and hold that WARN lawsuits should be governed by state limitations periods, as suggested by a harmonious reading of Lampf and DelCostello.[34] I, like those courts, believe that “[a] WARN cause of action does not fit the limited circumstances under which a federal statute of limitation should be applied”.[35]
V.
The next step is to decide which state limitations period ought to be borrowed. Although several Texas statutes have been suggested, it is my feeling that the Texas statute of limitations for contract claims provides the best analogy.[36] Under Tex.Civ.Prac. & Rem. Code Ann. § 16.004, then, WARN plaintiffs would have four years in which to institute their actions.
As all seem to agree, the fit will never be perfect; that is why it is a question of which round peg to stuff in a square hole. The Texas limitations period for contract claims works in that it is the most analogous state statute.[37] I view an action under WARN as
essentially an action for damages caused by an alleged breach of an employer’s obligation - Such an action closely resembles an action for breach of contract cognizable at common law.[38]
The Second Circuit in United Paperworkers agreed and applied Vermont’s six-year residual limitations period for all contract claims.[39] Even acknowledging that Texas is an employment-at-will state, the backpay provisions of WARN resemble damages for a *247 breach of implied contract. Simply put, I perceive no evidence that the Texas contract claim limitations period is at odds with WARN’s substantive provisions.[40]
VI.
Following the proper framework, we look last to whether litigation practicalities and policy considerations make the use of the NLRA limitations period “a significantly more appropriate vehicle for interstitial lawmaking”.[41] The majority, raising the specter of endless forum shopping among WARN litigants, concludes that they do. I come out the other way.
To start, the forum shopping concerns raised by the majority could be raised in reference to almost any federal law for which we were considering borrowing a state limitations period. If anything, WARN diminishes the threat of forum shopping.[42] Any threat of forum shopping that results from the right to file suit wherever the employer does business is stemmed by choice of law rules which dictate that the law of the site of the layoff (and, thus, injury and violation) would be chosen no matter where the suit was filed.[43]
We also examine the policy considerations to determine whether WARN calls for a particular degree of uniformity. To me, they do not. The Supreme Court in Auto Workers v. Hoosier Cardinal Corp.[44] instructed that the value of uniformity is far greater under the NLRA than under non-collective bargaining statutes. Even if we concede that the subject matter of WARN is “peculiarly one that calls for uniform law,” national uniformity is less important because WARN does not involve
those consensual processes that federal labor law is chiefly designed to promote— the formation of the collective agreement and the private settlement of disputes under it.[45]
WARN is decidedly not about collective bargaining. It is about what happens when there will be no more employer-employee relationship and, thus, nothing left to bargain for.
The majority’s other policy considerations are undercut by experience and common sense. For example, the majority states that the prompt resolution of labor disputes militates in favor of a six-month limitations period. Once a plant has closed, however, whether notice has been given or not, there can be no resolution of a labor dispute. The plant is gone, workers are without jobs, the community is left reeling. Although the majority is appropriately concerned with the availability of witnesses and evidence down the road,[46] the state legislatures measure those concerns against other public policy considerations when they enact their statutes of limitations.
The majority also asserts that an expansive limitations period would disserve WARN’s objective of providing a time cushion in which to seek other employment options. The majority states that providing funds to workers several years later does not serve that objective.[47] The majority has confused time cushions.
*248 The time in which to file suit is not the time cushion Congress sought to give workers; the time cushion is the advance notice that the workers would be losing their jobs. The workers could then prepare for the coming changes while still collecting their paychecks. Congress hoped that notice would be given (the time cushion) and that these causes of action would never accrue. Once they have accrued, however, the restrictive six-month limitations period serves to take away any remedial cushion that workers might get in compensation for their injury.
Worse, the six-month time frame will actually serve to stymie WARN’s true objective of giving workers and communities advance notice of impending hard times. By severely limiting the time frame in which potential WARN plaintiffs may file suit, companies can relax a bit and rest assured that they may “make redundant” many legally unsophisticated and unsuspecting workers — particularly non-unionized workers — without suffering the community backlash that will follow an announcement and, better, without the threat of future litigation. An extended limitations period, on the other hand, would function as a deterrent and, thus, an enforcement mechanism.
VII.
The majority gives a detailed explication of the trend away from borrowing state statutes of limitations in favor of uniform national rules. Even if that trend does exist — and I do not concede that it does — Lampf explicitly instructs that borrowing state limitations period is still the law. I do not doubt that uniform federal limitations periods might promote certainty, predictability, and minimization, but Congress is well aware of those values and yet frequently (as in this case) chooses to ignore them and leave the question open. Hence, if the state borrowing rule is truly becoming an anachronism, I will look to Congress, not to a law review, for evidence of its decline.[48]
VIII.
The plaintiffs, among countless others, have suffered the indignity of losing their employment without notice — in violation of federal law.[49] In seeking the redress to which Congress has made them entitled, this Court has closed the gate on them one last time, on a legal principle so tenuous in foundation it appears as but an academic exercise. Unfortunately for John Halkias, John Cureington, and Alvin Straudt and thousands of other workers similarly situated, it is anything but that.
Because I believe that the Court’s decision today promotes expediency and uniformity at the expense of the rights of workers, I dissent.
Before POLITZ, Chief Judge, KING, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART and PARKER, Circuit Judges.
Sept. 22, 1994
BY THE COURT:
A majority of the Judges in active service, on the Court’s own motion, having determined to have these cases reheard en banc,
IT IS ORDERED that these causes shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.

. 29 U.S.C. § 160(b).

. 29 U.S.C. §§ 2101-2109.

. The certified class represented by John Halkias and Barry Jackson consists of about two thousand non-unionized former employees of General Dynamics’s Fort Worth and Tulsa operations.

. See United Paperworkers Local 340 v. Specialty Paperboard, Inc., 999 F.2d 51, 53 (2d Cir.1993); United Steelworkers of Am. v. Crown Cork & Seal Co., 32 F.3d 53 (3d Cir.1994).

. 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321, reh’g denied, 501 U.S. -, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991).

. Id. at 356, 111 S.Ct. at 2778, 115 L.Ed.2d at 331 (citations omitted).

. Id.

. DelCostello v. International Bd. of Teamsters, 462 U.S. 151, 161, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983).

. Lampf, 501 U.S. at 356, 111 S.Ct. at 2778, 115 L.Ed.2d at 331-32 (quoting Reed v. United Transportation Union, 488 U.S. 319, 324, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989)). See also, United Paperworkers, 999 F.2d at 53 ("[The] Supreme Court has set forth limited circumstances under which it might be preferable to borrow a federal limitations period").

. Lampf, 501 U.S. at 356, 111 S.Ct. at 2778, 115 L.Ed.2d at 331.

. DelCostello, 462 U.S. at 161, 103 S.Ct. at 2289.

. Maj. op. at 230.

. Justice Scalia did not join part II.A of Justice Blackmun's plurality opinion. In his concurring opinion, Justice Scalia said: "In my view, absent a congressionally created limitations period state periods govern, or if they are inconsistent with the purposes of the federal act, no limitations period exists". Lampf, 501 U.S. at 364, 111 S.Ct. at 2783, 115 L.Ed.2d at 337 (Scalia, J., concurring) (emphasis added). Justices Stevens and Souter dissented. Justice Stevens's dissent explicitly disagrees with "[t]he Court’s rejection of the traditional rule of applying a state limitations period when the federal statute is silent ...” Id. at 368, 111 S.Ct. at 2784, 115 L.Ed.2d at 339 (Stevens, J., dissenting) (emphasis added). Finally, Justices O’Connor and Kennedy dissented .from the Court’s refusal to make its decision prospective only. Even they agreed, however, with the view that the plaintiffs’ “claims were governed by the state statute of limitations for the most analogous state cause of action". Id. at 369, 111 S.Ct. at 2785, 115 L.Ed.2d at 340 (O'Connor, J., dissenting) (emphasis in original).

.At oral argument a member of the panel asked counsel for General Dynamics if it was true that the Court had to look to state law first, before considering federal law. Counsel conceded the point. The following exchange took place.
Judge: "When we write this, we have to go through the state statutes first before we get to the federal statutes”.
Counsel: "I completely agree with that. That is the proper analysis, there is no doubt.”

. The Court in Lampf cited both the DelCostello case and Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987)—both of which the majority cites extensively in support of its position — for the proposition that federal law may supply the suitable period “when the operation of a state limitations period would frustrate the policies embraced by the federal enactment" (here, WARN). Id. at 355-56, 111 S.Ct. at 2778, 115 L.Ed.2d at 331.

. Id. at 357, 111 S.Ct. at 2779, 115 L.Ed.2d at 332.

. See Id. at 362, 111 S.Ct. at 2781-82, 115 L.Ed.2d at 335-36. See also United Parcel Service v. Mitchell, 451 U.S. 56, 68 n. 4, 101 S.Ct. 1559, 1567 n. 4, 67 L.Ed.2d 732, 744 n. 4 (1981) (Stewart J., concurring) (state borrowing rule is more appropriate when applied to a congressionally created cause of action as opposed to an implied one).

. Maj. op. at 230.

. Id. at 230. This mistake is repeated throughout the majority's opinion. For example, after detailing its perceived similarities in purpose and structure between WARN and the NLRA, the majority then states: "The question remains, however, whether a state period provides as close or closer 'fit' to WARN than does the NLRA.” Id. at 234. Again, the majority has the flow chart running in the wrong direction. We first look to state law and, if it fits and is not at odds with the federal statute, we use it.

. Judge McBiyde's opinion quoted the following passage from Judge Garcia's:
[T]he court concurs with the conclusion that "the federal policy warranting rapid resolution of [labor and employment] disputes favors the NLRA's shorter limitations period; and that a standardized limitations period would promote uniformity in enforcing the WARN act.”
Halkias v. General Dynamics Corp., 825 F.Supp. 123, 125 (N.D.Tex.1993).

. The majority criticizes my dissent for failing to appreciate that WARN governs not only plant closings, but mass layoffs and temporary closings. See maj. op. at 227 n. 1, 234 n. 18. The severance of the employment relationship and the repercussions that follow are the same for the victim of a mass layoff as for one who loses his job through a plant closing. That is true even if, in the case of a layoff, the possibility of reuniting the fired employee and the employer exists. Hence, my discussion of the different purposes of WARN and the NLRA applies with equal force to all of the job loss scenarios contemplated by WARN's provisions.

. See also, Crown Cork & Seal, 32 F.3d at 58 (WARN's "broader purpose” is to "protect workers, their families and their communities in the wake of potentially harmful employment decisions”.).

. I make this distinction in response to General Dynamics's assertion that the rapid resolution of disputes will better alleviate the distress of job loss by ensuring that the statute's remedies are promptly pursued. The statute presumably was passed with the belief that proper advance notice would be given, rendering the remedial provisions unnecessary in those cases.

. It bears emphasizing that the plaintiffs in both cases are not represented by labor unions.

. In this way, the present case is drastically different from the statute at issue in Lampf. In Lampf, the Court held that a federal statute of limitations applied to actions brought pursuant to Rule 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10(b)(5). The Court looked to the contemporaneously enacted remedial provisions that did supply a limitations period. See Lampf, 501 U.S. at 359-60, 111 S.Ct. at 2780, 115 L.Ed.2d at 333-34. Hence, the Court had the benefit of the balance struck by the Congress in limiting similar provisions of the same act. Unfortunately, we are not presented with those circumstances.

. The Second Circuit appreciated this distinction. In criticizing the district court's Staudt decision now before us, the court in United Paperworkers stated:
Those courts, which have deemed the NLRA period most applicable to WARN actions have failed to grasp this crucial distinction between statutes which specifically regulate the collective bargaining relationship and those which remain peripheral to that concern.
*245 United Paperworkers, 999 F.2d at 55.

. DelCostello, 462 U.S. at 171, 103 S.Ct. at 2294 (citation omitted); United Paperworkers, 999 F.2d at 53.

. Reed, 488 U.S. at 394, 109 S.Ct. at 666; United Paperworkers, 999 F.2d at 53-54.

. Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 20-21, 107 S.Ct. 2211, 2222, 96 L.Ed.2d 1 (1987) (internal quotations omitted) (evaluating Maine plant closing law).

. WARN defines a "mass layoff” sufficient to invoke its terms as a reduction in work force of (1) at least 33 percent of the employees (excluding any part-time employees) and (2) at least 50 employees (excluding any part-time employees); or at least 500 employees (excluding any part-time employees). 29 U.S.C. § 2101(a)(3)(B).

. The majority’s response to the practical problems that the six-month limitations period will cause is a statement that "many WARN plaintiffs have brought their claims within six months_” Maj. op. at 238 n. 35. It is telling, however, that the cases the majority cites for evidence of that proposition had unions for plaintiffs. The majority never addresses the additional burdens that non-unionized potential WARN plaintiffs face.

. The majority's weak comparison of the statutes’ purposes implicitly concedes this. WARN’s purpose is to protect workers and their families by requiring notice, 20 C.F.R. § 639.1(a) (1993), whereas the NLRA’s purpose is to facilitate the process of collective bargaining. 29 U.S.C. § 151. The majority's statement that they are similar in that both "regulate labor-management relations,” maj. op. at 233, is only slightly more convincing than the fact that both were passed by Congress.

. Cf. Crown Cork & Seal, 32 F.3d at 57 (“the mere fact that a statute touches upon issues of labor law does not mean that the Court must resort to the statute of limitations contained in § 10(b) of the NLRA”).

. United Paperworkers, 999 F.2d at 53-54.

. Id. at 54.

. The other good candidates are:
(1) The two-year Texas limitations period for personal injury, wrongful discharge, and employment discrimination claims, Tex.Civ. Prac. & Rem.Code Ann. § 16.003;
(2) The four-year Texas residual statute of limitations, Id. § 16.051;
(3) The six-month limitations period of the Texas Pay Statute, Tex.Rev.Civ.Stat.Ann. art. 5155; and
(4) The four-year federal residual statute of limitations Congress recently enacted for all federal causes of action that do not include their own limitations period, 28 U.S.C. § 1658.
At first glance, number (4) appears to cover exactly the instant case. Unfortunately, as the majority correctly indicated, § 1658 by its terms applies only to “civil actionfs] arising under an Act of Congress enacted after the date of the enactment of this section.” Because WARN was enacted before § 1658, § 1658 does not directly control in WARN cases. Several federal district courts have recognized that § 1658 supersedes the Supreme Court's Lampf analysis for causes of action filed after § 1658 took effect, but because WARN preceded § 1658, the Supreme Court's Lampf analysis governs this case.

. See DelCostello, 462 U.S. at 171, 103 S.Ct. at 2294 ("[A]s the courts have often discovered, there is not always an obvious state-law choice for application to a given federal cause of action; yet resort to state law remains the norm for borrowing of limitations periods.”).

. Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 705 n. 7, 86 S.Ct. 1107, 1113 n. 7, 16 L.Ed.2d 192. See also, Frymire v. Ampex Corp., 821 F.Supp. 651, 655 (D.Colo.1993) (applying state contract statute of limitations to WARN claim); Wallace v. Detroit Coke Corp., 818 F.Supp. 192, 196 (E.D.Mich.1993) (same).

. United Paperworkers, 999 F.2d at 53, 57.

. See Reed, 488 U.S. at 327, 109 S.Ct. at 627; Frymire, 821 F.Supp. at 655. I note, however, that I would have assented to a remand order to the district court to find which state limitations period was most appropriate.

. DelCostello, 462 U.S. at 172, 103 S.Ct. at 2294. Though I do not wish to beat a dead horse, I reiterate that studying the litigation practicalities and policy considerations is our last task — we reach it only if we have found a state statute that is at odds with the operation of WARN. That is not the case here.

. See United Paperworkers, 999 F.2d at 56 (forum shopping concerns are not great because "plant closing" is limited to a single site of employment and WARN actions will be filed where the injury took place or the employer does business).

. Auto Mechanics Local 701 v. Santa Fe Term. Serv., 830 F.Supp. 432, 436 (N.D.Ill.1993).

. 383 U.S. 696, 701, 86 S.Ct. 1107, 1110-11, 16 L.Ed.2d 192 (1966).

. Id. at 702, 86 S.Ct. at 1111 (internal quotations omitted); DelCostello, 462 U.S. at 162, 103 S.Ct. at 2289.

. Maj. op. at 238.

. Maj. op. at 239.

. At the risk of overkill, I note that the Harvard Law Review note upon which the majority relies as support for this trend in actuality supports my conclusion: "Writing for a plurality, Justice Blackmun acknowledged the continuing validity of the state borrowing rule.” The Supreme Court, 1990 Term—Leading Cases, 105 Harv.L.Rev. 177, 400 (1991). The article details that the exception to this accepted rule is just as I have stated: when the federal period “clearly provides a closer analogy” and when federal policies at stake make the federal rule a "significantly more appropriate vehicle” than the state rule. Id. Any reliance, then, on some perceived trend away from the state borrowing rule is pure conjecture, particularly in the face of the clean rule announced in Lampf.

. WARN has no cruelty provision and, so, Glas-tron fired three hundred employees on Christmas Eve.