**P.P., A Minor by and through his Parents, MICHAEL P. and Rita P.; Michael P.; Rita P., Adults Individually and on their own behalf, Appellants in 08–2874**

v.

**WEST CHESTER AREA SCHOOL DISTRICT, Appellant in 08–2940.**

Nos. 08–2874, 08–2940.

United States Court of Appeals, Third Circuit.

Argued July 14, 2009.

Filed: Nov. 2, 2009.

Dennis C. McAndrews, Esq., [Argued], Gabrielle C. Sereni, Esq., McAndrews Law Offices, Berwyn, PA, for Appellants/Cross–Appellees.

Jennifer Donaldson, Esq., [Argued], Sweet, Stevens, Katz & Williams, New Britain, PA, for Appellee/Cross–Appellant.

Before: RENDELL FUENTES and ROTH, Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

The plaintiffs in this special education case, Patrick P., a minor child, and his parents, Rita and Michael P., appeal the District Court's grant of summary judgment to the defendant, the West Chester Area School District ("District"). The plaintiffs made claims under the Individuals with Disabilities in Education Act ("IDEA"), § 504 of the Rehabilitation Act of 1973, and 42 U.S.C. § 1983, alleging that the District denied Patrick a free and appropriate public education ("FAPE") and violated the IDEA's child-find obligations. The District Court granted summary judgment to the District and applied the IDEA's two-year statute of limitations, which took effect on July 1, 2005, to the IDEA claims. It applied Pennsylvania's two-year personal injury statute of limitations to the § 504 claims. The District cross-appeals, arguing that the IDEA's statute of limitations should apply to the § 504 claims. We will affirm the District Court's grant of summary judgment to the District, but will not reach the IDEA statute of limitations issue. We disagree with the District Court's application of Pennsylvania's personal injury statute of limitations to the plaintiffs' § 504 claims, and hold that the federal IDEA statute of limitations applies to those claims.

## I. Background

### A. The IDEA and the Rehabilitation Act

 The IDEA requires that institutions receiving federal education funding provide a free and appropriate public education ("FAPE") to disabled children. 20 U.S.C. § 1412(a)(1). A school district provides a FAPE by designing and implementing an individualized instructional program set forth in an Individualized Education Plan ("IEP"), which "must be rea-

sonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 198 (3d Cir.2004) (citations and internal quotation marks omitted). The school district must conduct an evaluation of the student's needs, assessing all areas of suspected disability, before providing special education and related services to the child. 20 U.S.C. § 1414(b).

The IDEA also requires that a state have a system in place to identify, locate, and evaluate all children in the state who have disabilities and need special education and related services. 20 U.S.C. § 1412(a)(3); 34 C.F.R. § 300.111(a). Pennsylvania codifies its "child find" duties at 22 Pa.Code. §§ 14.121–14.125.

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits discrimination on the basis of disability by programs that receive federal funds. Under § 504, recipients of federal funds must "provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33(a). The claims in this case made under § 504 are parallel to the IDEA claims.

In December of 2004, Congress passed amendments to the IDEA, which had an effective date of July 1, 2005. The previous version of the IDEA did not have a statute of limitations. The amendments, which we will refer to as "IDEA–2004," included an explicit two-year statute of limitations:

> A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows.

20 U.S.C. § 1415(f)(3)(C). Pennsylvania does not have a separate explicit time limitation for these types of claims. Prior to IDEA–2004, we had held that there was no federal statute of limitations for compensatory education claims, in *Ridgewood Board of Education v. N.E.*, 172 F.3d 238 (3d Cir.1999). In *Bernardsville Board of Education v. J.H.*, 42 F.3d 149 (3d Cir.1994), we held that there was a one- to two-year statute of limitations for tuition reimbursement claims.

IDEA–2004 includes two exceptions to the statute of limitations period. The two-year period does not apply when the parent was prevented from requesting a due process hearing because of either:

> (i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or

> (ii) the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent.

20 U.S.C. § 1415(f)(3)(D).

**B. Facts**

The plaintiffs—Rita and Michael P. and their son Patrick, who was 11 years old at the time the complaint was filed—live within the boundaries of the District, but Patrick has never attended public school. During the 2001–2005 school years, when he was in kindergarten through third grade, Patrick went to a parochial school, St. Maximillian Kolbe ("St. Max"). During the summer of 2005, and in the 2005–2006 school year, when he was in fourth grade, he attended the Benchmark School ("Benchmark"), a private school for children with disabilities.

The District is obligated under the IDEA to identify and locate children who need special education services. It puts annual notices in the general circulation newspaper that inform parents about the availability of evaluations and the procedures for making an evaluation request, including that requests must be in writing, that there must be written consent to evaluate, and that there are timelines for requesting due process. The District provides the same information on its website and over public access television, and puts posters and pamphlets with this information in both District school buildings and in private schools within the District. Homeowners receive this information in their property tax bills. The District also trains principals and staff at private schools about the referral processes and child find issues. During the time relevant to the plaintiff's case, the Pennsylvania Department of Education found that the District was 100% compliant with its child find obligations.

According to the plaintiffs, Rita P. first requested that Patrick be evaluated for special education services in January of 2003, after he had shown problems with reading in kindergarten. Based on his kindergarten teacher's recommendation, Patrick received Title I reading services from the Chester County Intermediate Unit during his first grade year, in 2002 and 2003. Title I is designed to help students reach state academic achievement levels; private school students are guaranteed these services under 20 U.S.C. § 6301.

Rita P. claims that in early 2003 she contacted Carol Gaspar, the St. Max guidance counselor, and Michele McCann, then the District Supervisor of Special Education, seeking evaluation for Patrick. The plaintiffs contend that Ms. Gaspar contacted District Psychologist Virginia

Sutton about Patrick, and personally delivered referral documents to the District in April of 2003. As noted below, these individuals have denied that these contacts occurred. Carol Gaspar, the guidance counselor assigned to St. Max, testified that she had no recollection of any 2003 letter from the plaintiffs requesting evaluation, and no copy of the letter. Rita P. could not produce a copy of the letter, either. Virginia Sutton, the school psychologist who facilitated non-public school referrals in the relevant part of the District, had no record of any conversation with any of the plaintiffs or any documentation regarding Patrick, despite what the Appeals Panel called her "extraordinarily thorough and meticulous record-keeping system." (App.665.) As we will discuss further below, we agree with the Hearing Officer, the Appeals Panel, and the District Court that the District did not receive notice of Patrick's need to be evaluated in early 2003.

The plaintiffs privately retained a psychologist, Dr. Tracy Burke, who evaluated Patrick in April of 2003 and found that he had difficulties with reading, reading comprehension, written expression, and visual-motor integration. In June of 2003, a vision evaluator determined that Patrick needed vision therapy. He received vision therapy and Title I reading services through his second-grade year.

On November 22, 2004, during Patrick's third-grade year, the plaintiffs wrote directly to the District requesting an evaluation of Patrick and informing the District that a private evaluator, Dr. Lisi Levisohn, was expected to evaluate Patrick's eligibility for special education services on December 14, 2004. Susan Amsterdam, a District psychologist, interpreted the letter to be a request for eligibility evaluation, and on November 29, 2004, the District sent two forms to the parents: a Release of

Records form and a Parent Input form. The release informed the plaintiffs that there would be an information-gathering process before the District issued the Permission to Evaluate form ("PTE") and that the District's receipt of the signed form would start the clock on the timeline to complete the evaluation. The plaintiffs filled out and returned the forms to the District, enclosing a copy of Dr. Burke's evaluation of Patrick.

On December 17, 2004, the District sent copies of the releases to the guidance counselor at St. Max and to Dr. Levisohn. In mid- to late January of 2005, the District assembled a Child Study Team to determine whether to issue a PTE. The PTE was issued on February 2, 2005, 72 calendar days after the date of the plaintiff's November 22, 2004, letter.

Dr. Amsterdam, the District psychologist, suggested to the plaintiffs that they not sign the initial PTE, since it would have to be amended once Dr. Levisohn's private evaluation of Patrick was complete. She assured the plaintiffs that it would not take long to send out a new form. They did not sign the initial PTE. Dr. Levisohn sent Dr. Amsterdam a list of the evaluation measures she had used, and noted that her report was not yet finished. Dr. Amsterdam decided not to issue a new PTE until the District had Dr. Levisohn's complete report, which it received on April 5, 2005. Dr. Levisohn found that Patrick qualified for special education services because he was both Learning Disabled and Mentally Gifted. On April 7, 2005, the District sent a revised PTE, which the parents signed and mailed back on April

11, 2005, 64 days after the first form was mailed. The form instructed the plaintiffs that the District had 60 school days to complete its evaluation of Patrick. The District began testing Patrick in early June of 2005.

Before the District began testing Patrick, on the advice of Dr. Levisohn, the plaintiffs visited the Benchmark School. They liked the school, and applied for the 2005–2006 school year. The early admissions process required the plaintiffs to declare Patrick's candidacy for the fall term by April 21, 2005, and in the spring of 2005, the plaintiffs asked teachers at St. Max to complete questionnaires required by Benchmark and went to a family interview. In late May or early June of 2005, Benchmark accepted Patrick for both the 2005 summer program and for the 2005–2006 school year. In early June, the plaintiffs sent a tuition deposit to Benchmark. They financed the Benchmark tuition through AMS, a program that fronts the entire year's tuition to a private school and requires that parents repay the bank on a monthly basis, with limited opportunity for parents to opt out of full payment if their child does not attend the private school.

In July of 2005, the District completed testing Patrick and produced a preliminary Evaluation Report ("ER"), which it sent to the family. On August 19, 2005, the plaintiffs wrote to dispute the draft ER, because it did not identify a specific learning disability in Math Computation and did not include assessments of Patrick's social and emotional function.[1] The plaintiffs also informed the District that Patrick would en-

---

1. The Hearing Officer found that Patrick had performed at the "average" level during the math portion of his evaluation by Dr. Levisohn, despite becoming dizzy and not being familiar with some of the types of problems. He was not doing poorly in math at St. Max. Neither the District nor Dr. Levisohn performed social or emotional assessments because his parents reported that Patrick was happy, social, and responsible, and Dr. Levisohn found him to be pleasant, joyful, and engaging. His teachers described him as positive and motivated. See App. 646–47.

roll at Benchmark for the 2005–2006 school year, and that they had "no alternative" because the District's IEP would not be offered until after the beginning of the school year. (App.545.)

The District finalized the report and sent it to the family on September 1, 2005, before the beginning of the school year. The report incorporated many of Dr. Levisohn's findings, and identified a specific learning disability in Written Expression and Reading. Although Dr. Levisohn had not recommended occupational therapy, the District's report included such a recommendation.

The school year began on September 6, 2005. Patrick attended Benchmark. On September 8 or 9, 2005, the plaintiffs received an invitation from the District to participate in an IEP meeting. On September 13, 2005, the Individualized Education Program team met to develop an IEP. At that meeting, Rita P. signed the revised September 1, 2005, ER. The IEP the District developed provided for occupational therapy and small group direct instruction for Language Arts, Math, and Gifted Needs. It also addressed Patrick's spelling and keyboard skills and noted that he qualified for enrollment in the gifted program. The IEP included a long list of annual goals for Patrick and specific instructions on how his progress was to be measured, in addition to specially designed instruction and program modifications. The plaintiffs did not approve the IEP.

## C. The Administrative Process and the District Court's Decision

The plaintiffs filed a due process complaint on October 5, 2005, alleging claims under the IDEA, § 504 of the Rehabilitation Act, and the Pennsylvania School Code. They sought compensatory education for the alleged child find violations during the 2002–2003 and 2004–2005 school years and for an alleged denial of a FAPE, payment for an Independent Educational Evaluation ("IEE") for the due process hearing, reimbursement for the two previous IEEs, reimbursement for vision therapy in 2003 and 2004, and tuition reimbursement for Patrick's time at Benchmark in the summer of 2005 and the 2005–2006 school year.

The Hearing Officer limited the IDEA and § 504 claims to those arising after October 5, 2003, applying the IDEA–2004's two-year statute of limitations. She concluded that the District fulfilled its child find obligations and that the District's ER and IEP were appropriate, and that the parents were not entitled to compensatory education between October 2003 and May 3, 2005, reimbursement for vision therapy, or tuition reimbursement. The Hearing Officer awarded 102 hours of compensatory education for the period from May 4, 2005 to June 21, 2005, on the theory that if the District had been more prompt about its evaluation and IEP, a FAPE *should* have been available to Patrick on May 4, 2005, and his parents could have transferred him to a public school in the District for the last six weeks of the school year.

Both the plaintiffs and the District filed exceptions before the Appeal Panel. The panel held that the Hearing Officer had erred in awarding compensatory education because it is not an available remedy for private school students who are placed there unilaterally by their parents. *See* 34 C.F.R. §§ 300.137, 300.138. The panel wrote that

[t]he record in its entirety compels a conclusion contrary to the decision of the Hearing Officer. The Hearing Officer based her decision as to compensatory education on facts not in evidence (i.e., that the student *could* have been enrolled in the public school during that period) and, contrary to evidence pre-

sented and testimony given. The letter to the District in November as well as the Parent's testimony clearly demonstrates the Parents were not planning to move the Student to the District until at least the 2005–2006 year.... Therefore, because the Student was enrolled in a private school, and not in the District, and because the clear testimony indicates that even if the District had completed the evaluation in a timely manner, the Student would have remained in the private school leads this panel to the conclusion that compensatory education is not available.

(App.683.) The panel affirmed the rest of the Hearing Officer's decision.

The plaintiffs then filed this federal case seeking reversal of the two prior decisions and adding a § 1983 claim. On May 30, 2008, the District Court granted the District's Motion for Disposition on the Administrative Record and for Summary Judgment. The court granted summary judgment for the District on the plaintiffs' § 1983 claims, citing our decision in *A.W. v. Jersey City Public Schools*, 486 F.3d 791, 803, 805–06 (3d Cir.2007), in which we held that § 1983 is not an available remedy for violations of the IDEA and the Rehabilitation Act, because both statutes have sufficiently comprehensive remedial schemes. Like the Hearing Officer and the Appeal Panel, the District Court applied the IDEA–2004 two-year statute of limitations to the plaintiffs' claims, barring any claims arising before October 5, 2003, two years before the plaintiffs requested a due process hearing. It concluded that the District did not violate its child find obligations, and that the plaintiffs were not entitled to compensatory education or tuition reimbursement. The District Court denied the District's request to apply

IDEA–2004's statute of limitations to the § 504 claims, instead applying Pennsylvania's two-year personal injury statute of limitations.

## II. Discussion

### A. Jurisdiction and Standard of Review

The plaintiffs made claims under the IDEA, § 504 of the Rehabilitation Act of 1973, and § 1983. The district court had jurisdiction under 20 U.S.C. § 1415(i)(2)(A) and 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

■ As discussed above, this case came to the District Court after the parents filed a due process complaint before a Hearing Officer; both parties filed exceptions to the officer's decision and the case went to a Special Education Appeals Panel. The parents then filed a federal complaint. In reviewing a dispute brought under the IDEA's administrative process, a district court gives "due weight" and deference to the findings in the administrative proceedings. *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). We have described this "due weight" standard as "modified *de novo* " review. *S.H. v. State–Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 269–70 (3d Cir.2003). "Factual findings from the administrative proceedings are to be considered prima facie correct," and if the reviewing court does not adhere to those findings, it is " 'obliged to explain why.' " *Id.* at 270 (citation omitted). Under the two-tier special education system in place at the time this case was going through the administrative process, district courts owe more deference to the findings of the Appeals Panel than to those of the Hearing Officer.[2] *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 529–30 (3d Cir.1995).

---

2. Pennsylvania has now transitioned to a sin-

gle-tier administrative process; hearing offi-

The statute of limitations claims and the plaintiffs' claims for compensatory education and tuition reimbursement are subject to plenary review as conclusions of law. The other issues—whether the family proved an exception to the IDEA–2004 statute of limitations, and whether the District fulfilled its FAPE obligations—are subject to clear error review as questions of fact. *See S.H.*, 336 F.3d at 271. The plaintiffs cite *Wexler v. Westfield Board of Education*, 784 F.2d 176, 181 (3d Cir.1986), for the proposition that the application of the IDEA's requirements to a student's medical and educational needs is a mixed question of law and fact, but our later precedent makes it clear that "[t]he issue of whether an IEP is appropriate is a question of fact." *Carlisle*, 62 F.3d at 526.

### B. Section 504 of the Rehabilitation Act Statute of Limitations

■ This case poses an issue of first impression: whether IDEA–2004's two-year statute of limitations should apply to parallel claims under § 504 of the Rehabilitation Act. Section 504 does not have its own statute of limitations.

■ The District Court applied Pennsylvania's two-year personal injury statute of limitations to the plaintiffs' § 504 claims, citing the strong preference for importing an analogous state statute of limitations when federal statutes do not include an express statute of limitations. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Haggerty v. USAir, Inc.*, 952 F.2d 781, 783 (3d Cir.1992). The District argues that the District Court erred when it applied the personal injury statute of limitations to those claims; it says that the court should have imported the two-year statute of limitations from IDEA–2004.

The District acknowledges that prior to the passage of the IDEA amendments in 2004 the use of the personal injury limitations period was appropriate, but argues that the IDEA is so analogous to § 504 of the Rehabilitation Act that the IDEA's limitations period should apply. A court may borrow a limitations period from an analogous federal law where that law "clearly provides a closer analogy than the available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *DelCostello*, 462 U.S. at 172, 103 S.Ct. 2281; *see also United Steelworkers of Am. v. Crown Cork & Seal Co.*, 32 F.3d 53, 56–57 (3d Cir.1994), *aff'd sub nom. N. Star Steel Co. v. Thomas*, 515 U.S. 29, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995).

The IDEA and § 504 of the Rehabilitation Act do similar statutory work. The IDEA protects the rights of disabled children by mandating that public educational institutions identify and effectively educate those children, or pay for their education elsewhere if they require specialized services that the public institution cannot provide. Section 504 of the Rehabilitation Act is parallel to the IDEA in its protection of disabled students: it protects the rights of disabled children by prohibiting discrimination against students on the basis of disability, and it has child find, evaluation, and FAPE requirements, like the IDEA. The Rehabilitation Act is certainly closer in subject matter and goals to the IDEA than to the Pennsylvania personal injury statute, which deals with torts against person and property.

While we have held that similarity between federal statutes is not enough to justify applying the statute of limitations

cers provide all state-level review.

from one statute to claims made under the other, *see Kingvision Pay-Per-View, Corp. v. 898 Belmont, Inc.*, 366 F.3d 217, 222 (3d Cir.2004) ("[T]he desire to unify the limitations periods of federal laws with similar purposes is not a sufficient reason to adopt federal limitations periods."), the "existence and availability of a more sharply focused federal analogue" is an important consideration. *Rossiter v. Potter*, 357 F.3d 26, 33 (1st Cir.2004). Here, we consider whether to apply a general state personal injury limitations period to claims made under a federal statute with very specific goals, when Congress has recently acted to include a statute of limitations in a federal statute with very similar goals. *See* Norman J. Singer, Statutes and Statutory Construction 702 (2003 rev. ed.) ("When two or more statutes of limitations deal with the same subject matter, the statute which is more recent and specific will prevail over the older and more general one."). We also note that there are few federal statutes as closely related, and under which such similar claims may be brought, as the IDEA and § 504 of the Rehabilitation Act.

As the District Court pointed out, we "take seriously the Supreme Court's admonition that analogous state statutes of limitations are to be used unless they frustrate or significantly interfere with federal polices." *Crown Cork*, 32 F.3d at 57. Here, we fear that applying the state statute of limitations could frustrate federal policy in certain situations. The IDEA has two specific exceptions to the statute of limitations: the limitations period does not apply if a parent was prevented from requesting a due process hearing because of either (1) specific misrepresentations by the school that it had resolved the problem, or (2) the school's withholding of statutorily required information from the parent. 20 U.S.C. § 1415(f)(3)(D). There are no such exceptions to the Pennsylvania statute of limitations period for personal injury claims. In addition, tolling principles that affect the application of state statutes of limitations would presumably not affect the IDEA statute of limitations, with its express exceptions to the limitations period.

In this case, the plaintiffs make child find and FAPE claims under both the IDEA and the Rehabilitation Act. All of the plaintiffs' § 504 claims are premised on their IDEA claims—they make no separate claim of disability discrimination under § 504. It does not make sense that the virtually identical claims made under these two statutes would be treated differently from a statute-of-limitations perspective: Congress has expressed an interest in promptly resolving disputes under the IDEA, as evidenced by its passage of the statute-of-limitations amendment. If a plaintiff was barred from asserting an IDEA claim because the statute of limitations had run and neither of the exceptions applied, why should the identical claim, made under the Rehabilitation Act, be subject to different tolling principles?

We are convinced that the IDEA's limitations period is a better fit for education claims made under the Rehabilitation Act than the personal injury statute of limitations. Although it appears that none of our sister circuits have faced this issue, district courts confronting the issue have concluded that claims for education under the Rehabilitation Act should be governed by the IDEA's statute of limitations. *See, e.g., Bell v. Bd. of Educ. of Albuquerque Pub. Sch.*, No. 06-1137, 2008 WL 4104070, at \*24 (D.N.M. Mar.26, 2008) (holding that the IDEA's limitations period applies to Rehabilitation Act claims where all claims are for education and there are no pure discrimination claims made under the Rehabilitation Act).

The statute of limitations from the IDEA provides a "closer analogy" to the Rehabilitation Act than Pennsylvania's personal injury statute of limitations. Under *DelCostello*, "the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." 462 U.S. at 172, 103 S.Ct. 2281. Therefore, we hold that the IDEA's two-year statute of limitations applies to claims made for education under § 504 of the Rehabilitation Act.

### C. The District's Obligations under the IDEA and the Rehabilitation Act

Next, we address whether the District Court was correct that the District satisfied the requirements of the IDEA and the Rehabilitation Act in its identification and evaluation of Patrick for special education services.

### 1. The Plaintiffs' Claims Before November 22, 2004

The plaintiffs claim that they initially sought services for Patrick in early 2003. As we discussed above, there is no evidence in the record, apart from the testimony of Rita P., to support this assertion. The Hearing Officer found that Rita P.'s claim that she had initiated the evaluation process in January of 2003 was not credible: she could not provide a copy of the letter she claims she wrote, and numerous District and school employees with whom she claimed to speak have no records of their conversations. The Hearing Officer

found that Dr. Virginia Sutton, the school psychologist who worked with all non-public school referrals in the District, had no record of any conversation with either parent or documentation referring to Patrick, despite maintaining an "extraordinarily thorough and meticulous record-keeping system." (App.642.) The Appeals Panel and the District Court accepted this finding, and we will not disturb the findings of the Hearing Officer that the District did not have notice of Patrick's need to be evaluated until it received Rita P.'s November 22, 2004, letter. We will consider only those claims arising after that date.[3]

### 2. Timeliness of Evaluation

The plaintiffs allege that there was an unlawful delay between the parents' request for an evaluation of Patrick and the completion of the process. The Hearing Officer ordered 102 hours of compensatory education as an equitable remedy for the time the family had to wait for the District's evaluation process to be completed. The Hearing Officer called the District's delay "egregious" and said that the District denied Patrick the possibility of receiving a FAPE for May and June 2005.

The District acknowledges the delay but argues that it was due to the parents' seeking a private IEE. Further, the District contends, the delay was harmless, because it made no difference in the parents' decision to keep Patrick in private school—Rita P. testified that the plaintiffs did not intend to move Patrick from St. Max during the 2004–2005 school year.

---

**3.** At oral argument, the plaintiffs argued that the Chester County Intermediate Unit, which provided Patrick with Title I services at St. Max, should be considered an agent of the District and its knowledge of Patrick's need for Title I services should be imputed to the District and considered notice of a need for evaluation under the IDEA. The plaintiffs did not raise this issue before the District Court; although their briefs on appeal mention that Patrick got Title I services from the CCIU, oral argument was the first time they argued that the CCIU was an agent of the District. As this argument was not properly raised, we will not consider it.

The Appeals Panel agreed with the District and reversed the Hearing Officer's award of compensatory education, finding that the "record read in its entirety compels a conclusion contrary to the decision of the Hearing Officer" because the record showed that there was no way Patrick would have gone to public school until the 2005–2006 school year, and compensatory education should only have been awarded if the record showed that, if the evaluation had been timely, the parents would have transferred him to the District. (App.683.)

The District Court found that the District took an "unduly long time to complete its evaluation," but that the evaluation was substantively appropriate and that a procedural violation alone cannot support a compensatory education award. *See* 20 U.S.C. § 1415(f)(3)(E)(ii); *Me. Sch. Admin. Dist. No. 35 v. Mr. R.,* 321 F.3d 9, 19 (1st Cir.2003) ("We recognize that compensatory education is not an appropriate remedy for a purely procedural violation of the IDEA"); *Erickson v. Albuquerque Pub. Schs.,* 199 F.3d 1116, 1122–23 (10th Cir. 1999) ("The district court properly found that compensatory education is not an appropriate remedy for a procedural violation of the IDEA."). We agree with the District Court. While the delay in evaluating Patrick was unfortunate, the record does not show that the delay had any impact in the plaintiffs' decision to keep Patrick at St. Max for the 2004–2005 school year.

### 3. Child Find Obligations

 School districts have a continuing obligation under the IDEA and § 504 to identify and evaluate all students who are reasonably suspected of having a disability under the statutes. *Ridgewood,* 172 F.3d at 253. The Hearing Officer, the Appeals Panel, and the District Court all concluded that the District did not violate its child

find obligations. The plaintiffs' argument rests primarily on their unproven allegation that they first provided notice to the District in January of 2003. As we said above, we will not disturb the findings of the Hearing Officer, Appeals Panel, and District Court that the District did not have notice of Patrick's need to be evaluated until the parents' letter of November 22, 2004.

The District also points out that its child find efforts, in this case and in other cases, are comprehensive: it routinely posts child find notices in the local paper, makes the information available on its website, and sends residents the information in their tax bills. Targeted posters and pamphlets are placed in private schools. The Pennsylvania Department of Education was satisfied that the District was 100% compliant with its child find obligations during the relevant time. The District Court was convinced that the District's child find activities were appropriate; we are as well.

### 4. Free and Appropriate Public Education

 Every disabled student is entitled to an FAPE under the IDEA. 20 U.S.C. § 1412. It must be specially designed to meet the unique needs of that child, be provided under public supervision and direction. and be provided at no cost to the parents. The Hearing Officer, the Appeals Panel, and the District Court all agreed that the IEP and the ER were appropriate and met IDEA requirements. The plaintiffs argue that the District denied Patrick a FAPE because the ER did not identify him as having a learning disability in math computation and did not assess his social and emotional functioning. As the Appeals Panel found, those areas were not identified as suspected disabilities and so were properly excluded from the ER. Based on the record, the District's

evaluation of Patrick and the IEP it offered him were substantively appropriate and reasonably calculated to provide a meaningful educational benefit. We agree with the District Court that the District met the FAPE requirements of the IDEA.

### 5. Tuition Reimbursement and Compensatory Education

■ The plaintiffs seek tuition reimbursement for Patrick's placement at Benchmark during the summer of 2005 and the 2005–2006 school year, based on their allegations that the District's ER and IEP were inappropriate.

The IDEA requires the state to reimburse parents for private school tuition in some situations where the school "had not made a free appropriate education available to the child in a timely manner prior to that enrollment." 20 U.S.C. § 1412(a)(10)(C)(ii); *see also Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 532, 127 S.Ct. 1994, 167 L.Ed.2d 904 (2007); *Florence County Sch. Dist. v. Carter*, 510 U.S. 7, 13, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993). No reimbursement is required if the school offered a FAPE and the parents placed the child in a private school anyway.[4] The Hearing Officer, the Appeal Panel, and the District Court all found that the District offered a FAPE. We agree.

■ In the alternative, the plaintiffs seek compensatory education based on events from the 2002–2003 school year through the 2004–2005 school year. " 'A disabled student's right to compensatory education accrues when the school knows or should know that the student is receiving an inappropriate education.' " *Lauren W. v. DeFlaminis*, 480 F.3d 259, 272 (3d Cir.2007) (quoting *Ridgewood*, 172 F.3d at 250). The right to compensatory education arises not from the denial of an appropriate IEP, but from the denial of appropriate education. *Ridgewood*, 172 F.3d at 250.

As we have stated above, the District did not receive notice that Patrick needed evaluation for special education services until November of 2004, so the plaintiffs' claims for compensatory education before that point must fail. Moreover, as we have discussed above, a procedural violation cannot support a compensatory education claim, so the fact that there was a delay in providing the evaluation and IEP to the plaintiffs cannot sustain their compensatory education claim, because Patrick's substantive rights were not affected. *See, e.g., Me. Sch. Admin. Dist.*, 321 F.3d at 19 (holding that "compensatory education is not an appropriate remedy for a purely procedural violation of the IDEA").

Further, compensatory education is not an available remedy when a student has been unilaterally enrolled in private school. *See* 20 U.S.C. § 1412(a)(10); 34 C.F.R. §§ 300.137, 300.138, 300.148(c); *In re The Educational Assignment of J.D.*, Spec. Educ. No. 1120, at 14 (Pa. Spec. Educ. Appeals Panel 2001), *available at* http://odr.pattan.net/ODRapps/App1120.pdf ("[T]uition reimbursement and compensa-

---

**4.** The Supreme Court's decision in *Forest Grove School District v. T.A.*, —— U.S. ——, 129 S.Ct. 2484, 174 L.Ed.2d 168 (2009), addressed the issue of whether plaintiffs may be reimbursed for private special education services when the student is unilaterally placed in a private institution. The Court held that, under the IDEA, such services merited reimbursement if the public institution did not provide a FAPE, even if the student had never received special education services at the public institution. *Forest Grove* is not relevant to the situation here, where the District did not deny the student a FAPE and where the student not only never received special education services from the District, but was never enrolled in the District in the first place.

tory education are two distinct remedies. They are not interchangeable. Tuition reimbursement is a remedy to parents who have unilaterally placed their child in a private school when a district offers their child an inappropriate educational placement and the proposed IEP was inappropriate under the IDEA thereby failing to give the child FAPE. In contrast, compensatory education is a retrospective and in kind remedy for failure to provide an appropriate education for a period of time." (citations omitted)).

As the Appeals Panel noted, the record shows that Patrick has never been enrolled in public school. Therefore, compensatory education is not an available remedy.

### 6. Reimbursement for IEEs and Vision Therapy

■■ A parent has the right to an IEE at public expense if the parent disagrees with the evaluation obtained by the school. 34 C.F.R. § 300.502(b)(1); *Schaffer v. Weast*, 546 U.S. 49, 60, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005). The plaintiffs seek reimbursement for the 2003 and 2005 IEEs that they obtained privately, and for vision therapy they obtained privately from July 2003 through March 2004.

The plaintiffs may not receive reimbursement for the 2003 IEE and the 2003–2004 vision therapy because Patrick received those services before the District knew or should have known that Patrick needed evaluation for special education services. The 2005 IEE is not eligible for reimbursement because the parents had already made an appointment for the IEE when they requested District evaluation. The Hearing Officer, Appeals Panel, and District Court all held that because the parents were not challenging the District's evaluation, the District was not responsible for reimbursement. We agree.

### D. IDEA Statute of Limitations

The District Court applied the two-year statute of limitations from IDEA–2004 to the plaintiffs' claims, barring claims arising before October 5, 2003. The plaintiffs claim that this is an unlawful retroactive application of the limitations period, citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The District argues that the District Court properly barred the pre-October 5, 2003, IDEA claims because the amendments were in effect on October 5, 2005, when the parents initiated their due process request.

The issue of whether IDEA–2004's two-year statute of limitations applies to cases where the underlying events took place before IDEA–2004's effective date is an important one, and one that our court has not yet addressed. A number of our district courts have dealt with the issue, and reached different results.[5] However, we will not reach that issue today, because whether or not we apply the two-year statute of limitations, all of the plaintiffs' claims that are supported by the record were timely filed. There are no claims that pre-date the notice given in November 2004, and the plaintiffs filed their due

**5.** *Compare Tereance D. v. Sch. Dist. of Phila.*, 570 F.Supp.2d 739 (E.D.Pa.2008) (holding that the application of IDEA–2004's two-year statute of limitations to the plaintiffs' compensatory education claims arising before the statute's enactment was impermissibly retroactive under *Landgraf*), *J.L. v. Ambridge Area Sch. Dist.*, No. 06–1652, 2009 WL 1119608 (W.D.Pa. Apr.27, 2009) (same), *and Steven I.* *v. Cent. Bucks Sch. Dist.*, No. 08–571, 2009 WL 415767 (E.D.Pa. Feb.18, 2009) (same), *with Evan H. v. Unionville–Chadds Ford Sch. Dist.*, No. 07–4990, 2008 WL 4791634 (E.D.Pa. Nov.4, 2008) (holding that the statute of limitations bars claims that arose prior to its enactment), *and Sch. Dist. of Phila. v. Deborah A.*, No. 08–2924, 2009 WL 778321 (E.D.Pa. Mar.24, 2009) (same).

process request in October of 2005, so there is no real issue of the statute of limitations or its retroactivity here. Any ruling on the statute of limitations would be purely advisory. Notwithstanding the parties' desire for us to do so, we decline to opine on this issue when it is not implicated in the case before us.[6]

Accordingly, we will REVERSE the District Court's ruling with respect to the applicability of the Pennsylvania personal injury statute of limitations to the plaintiffs' claims under § 504 of the Rehabilitation Act, but will AFFIRM its order granting summary judgment to the District.

---

**6.** Because we decline to rule on the IDEA statute of limitations issue, we will not address whether either of the two exceptions to the statute of limitations—specific misrepresentations or withholding of information by the District—apply. 20 U.S.C. § 1415(f)(3)(D).