**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2698
_____

A. H., by and through her Parent, K. P.,
Appellants

v.

COLONIAL SCHOOL DISTRICT
_____

On Appeal from the United States District Court
for the District of Delaware
District Court No. 1-16-cv-00726
District Judge: The Honorable Richard G. Andrews

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 24, 2019

Before: SMITH, *Chief Judge*, CHAGARES, and GREENAWAY, JR.,
*Circuit Judges*

(Filed: July 10, 2019)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SMITH, *Chief Judge*.

A.H., a minor student (Student), by and through K.P, her parent (Parent), initiated this civil action pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.* Parent challenged the refusal of the Colonial School District (Colonial) to provide, at public expense, an Independent Educational Evaluation (IEE). After the District Court ruled in favor of Colonial, this timely appeal followed.[1] For the reasons set forth below, we will affirm the judgment of the District Court.

## I.

Student started kindergarten in 2011 at Colonial. By the fall of 2014, Student was repeating second grade. In mid-September, an Evaluation Summary Report (ESR) was prepared to determine whether Student had a disability under the IDEA and if so, her educational needs. The ESR set out:

1. information from Parent regarding Student's family life;
2. classroom behavior and performance;
3. teacher observations;
4. an occupational therapy assessment addressing Student's visual perceptual skills, fine motor skills, visual motor skills, and educational needs related to school-based occupational therapy; and

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(2). We have final order jurisdiction under 28 U.S.C. § 1291.

5. the assessment by school psychologist, Emily Klein, based on not only interviews with Student, Parent, teacher, and her own observation, but also a review of Student's record and several assessment tests.[2]

Ms. Klein's report acknowledged that Student's cognitive ability and academic skills were a concern and that her emotional/behavioral needs, which included disruptive and atypical behaviors, affected her classroom functioning. The ESR team concluded that Student had an Emotional Disturbance, which qualified as a disability. The ESR discussed the focus on Student's emotional and behavioral difficulties, and acknowledged that although Student displayed some aspects consistent with an Autism Spectrum Disorder, the team believed that classifying Student with an Emotional Disturbance was the most appropriate determination at that time given her history of trauma and abuse. After completing the ESR, the team prepared an Individualized Education Program (IEP).

Student advanced to third grade in the fall of 2015. Documentation on October 1, 2015, noted that Student's behavior was problematic with outbursts and conduct that created safety concerns for Student and others present. Two weeks later, Student's behavior was again disruptive and she used a threatening gesture that was accompanied by an oral statement of her intent to kill those present. Student

---

[2] The tests included the Stanford-Binet Intelligence Scales, 5th Edition (SB-V); the Kaufman Test of Educational Achievement, 2nd edition (KTEA-II); the Behavior Assessment Scale for Children – 2nd Edition (BASC-2); and the Gilliam Asperger's Disorder Scale (GADS).

was admitted to the Terry Children's Psychiatric Center and diagnosed with a mood disorder and attention deficit hyperactivity disorder; psychiatric medication was prescribed. After a week, Student was discharged. Arrangements were made for homebound instruction. Student's placement later changed to Southern Elementary School Intensive Learning Center.

Thereafter, Parent advised Colonial that she disagreed with the September 2014 ESR and requested that the school pay for an IEE assessing Student in the following areas: neuropsychological assessment, occupational therapy, psychiatric assessment, and a functional behavior assessment. Colonial denied the request. In early February 2016, Colonial requested a due process hearing before a Delaware Due Process Hearing Panel. Colonial continued to update its evaluations and assessment of Student's abilities.

At the April 2016 Due Process Hearing, several witnesses appeared for Colonial and Psychologist Kara Schmidt testified on behalf of Parent. Dr. Schmidt opined that the September 2014 ESR was "incomplete" and that additional testing should have been performed. On May 23, 2016, the Hearing Panel concluded that Colonial's evaluation was appropriate and that the IEE testing requested by Parent at the public's expense was not required.

Parent then initiated this civil action in the District Court, seeking payment by Colonial of the expense of an IEE. A few months later, Dr. Schmidt performed a

4

neuropsychological evaluation and made multiple recommendations. Although Parent sought to supplement the administrative record with Dr. Schmidt's neuropsychological evaluation, the District Court denied the request. Thereafter, the District Court denied Parent's Motion for Judgment on the Administrative Record and affirmed the Hearing Panel's order denying the request for payment of the IEE. Even though the Administrative Record had not been supplemented with Dr. Schmidt's report, the District Court referred to Dr. Schmidt's report in its analysis, noting that consideration of the report would not have affected its ruling.

Parent appealed, presenting two issues for review. First, she contends that the District Court erred by denying the motion to supplement the record with Dr. Schmidt's report. Second, she asserts that District Court erred in upholding the Hearing Panel's decision.

## II.

We review a district court's order denying a motion to supplement the Administrative Record for abuse of discretion. *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 760 (3d Cir. 1995). In deciding whether to allow supplementation, a district court "must exercise particularized discretion in its rulings so that it will consider evidence relevant, non-cumulative and useful in determining whether Congress' goal has been reached for the child involved." *Id.*

We conclude that the District Court did not abuse its discretion in denying the request to supplement the Administrative Record with Dr. Schmidt's report. The Court acknowledged that the report had some relevance even though it had been conducted more than two years after the September 2014 ESR. Yet the report was cumulative of Dr. Schmidt's testimony before the Hearing Panel and would bolster that testimony by elaborating upon it. As a result, the District Court reasoned that the admission of Dr. Schmidt's report would be prejudicial because Colonial would not be able to rebut its substance. The District Court's reasoning is sound, and we conclude that the District Court did not abuse its discretion by denying supplementation.

III.

We also reject Parent's contention that the District Court erred in upholding the Hearing Panel's decision not to require Colonial to pay for the requested IEE. In the IDEA context, "[w]e review a district court's findings of fact for clear error, but we exercise plenary review over the legal standards that a district court applies and over its legal conclusions." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010).

Under the IDEA, states are required to provide children with disabilities a "free appropriate public education," which meets the needs of each individual student. 20 U.S.C. § 1412(a); *Id.* § 1400(d)(1)(A). To that end, school districts must

conduct an evaluation of a child with a disability and determine that child's educational needs by developing an IEP. *See id.* § 1414(a)(1)(A), (d)(2)(A); *Holmes v. Millcreek Twp. Sch. Dist.*, 205 F.3d 583, 589 (3d Cir. 2000). The objective is "to confer some educational benefit upon the handicapped child." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 200 (1982).

Parents of a disabled child are entitled to participate in the process used to develop the plan for the child. 20 U.S.C. § 1415(b)(1). If a parent disagrees with an evaluation completed by the school, "[a] parent has the right to an IEE at public expense." *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 740 (3d Cir. 2009). But where a parent requests an IEE at public expense, a school district can, as Colonial did in this instance, request a due process "hearing to show that its evaluation is appropriate." 34 C.F.R. § 300.502(b)(2)(i). If the school district successfully proves that its own evaluation was appropriate, a parent is not entitled to an IEE at public expense. 34 C.F.R. § 300.502(b)(3); *see also Holmes*, 205 F.3d at 590–91. Whether Colonial's evaluation was "appropriate is a question of fact." *D.S.*, 602 F.3d at 564.

In this case, the District Court refused to set aside the Hearing Panel's decision that Colonial's evaluation of Student was appropriate and that Colonial did not have to bear the expense of the IEE. It considered the IDEA's requirements for conducting educational evaluations and concluded that Colonial's September 2014

7

ESR complied with those requirements. The Court noted that a variety of tools and strategies had been employed in evaluating Student, which were "technically sound instruments." 20 U.S.C. § 1414(b)(2)(A), (C). In the Court's view, although the Hearing Panel had improperly relied upon Student's educational progress and the absence of a timely request for the IEE, Colonial had appropriately considered all of Student's assessments and did not rest its decision on a single criterion. *See id.* § 1414(b)(2)(B). The District Court carefully discussed the record evidence regarding the four areas of the IEE requested and explained why the Hearing Panel permissibly concluded that additional testing was not necessary.

Parent contends the District Court erred because, despite refusing to supplement the record with Dr. Schmidt's report, the Court relied upon it in reaching its conclusion. The District Court cited to the report in a footnote, noting only that even if the Court had admitted the report, its contents would not have changed the Court's determination as to the appropriateness of Colonial's ESR and whether Student was entitled to an IEE at public expense. Although Parent asserts this was unfair, we are not persuaded. Mindful of the significance of its decision, the Court took the extra step of reconsidering whether Dr. Schmidt's report would have made a difference had it been admitted as a supplement to the record. This thoughtful analysis provided information to Parent regarding the merits of the dispute in the event the order denying supplementation was later overturned on appeal.

Parent also argues that the District Court erred in upholding the Hearing Panel's credibility finding as to Dr. Schmidt's testimony. A credibility determination by a Hearing Panel is "due special weight" unless there is "non-testimonial, extrinsic evidence in the record [that] would *justify* a contrary conclusion." *D.S.*, 602 F.3d at 564 (quoting *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004)). The Hearing Panel accorded due weight to Colonial's ESR, which was based on multiple assessments, as well as observations of Student and interviews with her Parent and teachers. The Panel highlighted the decision to classify Student with an Emotional Disturbance, which entitled her to special education services to address her behaviors. The Hearing Panel was well aware that additional testing could have been completed, *see* 5A; its focus, however, was on whether the ESR was appropriate for Student given both the behavior she was exhibiting and her Emotional Disturbance classification, which includes some behaviors consistent with an autism diagnosis. The focus was not, nor should it have been, on whether the ESR explored all facets of Student's disabilities.

Consistent with this focus, the Hearing Panel discounted Dr. Schmidt's testimony regarding the additional testing she believed was warranted, pointing out that she had neither met nor observed Student, was not aware of Student's programs in her current placement, and was not familiar with the most recent data collected

9

for Student. We conclude these were legitimate grounds for finding Dr. Schmidt's testimony not fully credible.

Parent further argues that Dr. Schmidt's testimony was presented to address the inadequacy of Colonial's ESR, not Student's status. As such, Parent submits that Dr. Schmidt's acquaintance with Student and familiarity with her programming was an improper basis for discrediting Dr. Schmidt's opinion that additional testing should be conducted. The Hearing Panel's focus on Student's ESR and its responsiveness to Student's demonstrated behaviors—and Colonial's superior knowledge of that demonstrated behavior—was a permissible basis for discounting Dr. Schmidt's testimony that additional testing was warranted. *See Holmes*, 205 F.3d at 592 ("In addition, we find persuasive the School District's argument that their staff in some ways was better-qualified than the WPSD's staff to evaluate Rebecca. For instance, the School District's staff were familiar with the curriculum at Belle Valley and with Rebecca and the progress she was making.").

Finally, Parent contends the District Court improperly accepted Colonial's explanation that it did not obtain a psychiatric evaluation because one had been done by the Terry Children's Psychiatric Center. Parent asserts there is no support in the record that any psychiatric evaluation was actually performed. We disagree. The Intake Services Higher Level of Care Referral form dated October 19, 2015 indicates that Student was being treated on an inpatient basis at Terry Children's Psychiatric

Center and had been treated at some point around 2013-2014 by a psychiatrist. And Parent consented to the release by the Center to Colonial of the admission and discharge summaries, as well as the psychological and psychiatric evaluations. The Terry Children's Psychiatric Center Discharge Summary documented that a psychiatric evaluation had been completed and a Transfer Instruction Sheet set out Student's diagnoses and psychiatric medications.

## IV.

For the reasons set forth above, we will affirm the judgment of the District Court. We grant the motion to seal Volume III of the Appendix.