PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1648
_____

RESPONSIBLE ADULT Q.T., on behalf of minor plaintiff
H.P.-B.; GUARDIAN E.E., on behalf of minor plaintiff H.P.-
B.; NATURAL FATHER F.P., on behalf of minor plaintiff,
H.P.-B.

Appellants

v.

POTTSGROVE SCHOOL DISTRICT
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. Action No. 2:20-cv-04450)
District Judge: Honorable C. Darnell Jones, II
_____

Argued March 20, 2023
_____

Before: JORDAN, GREENAWAY, JR., and MCKEE,
*Circuit Judges*.

(Opinion Filed: June 14, 2023)

Brian S. Wolfman, Esq.
Georgetown University Law Center
600 New Jersey Avenue NW
Suite 312
Washington, DC 20001

Alan L. Yatvin, Esq. [ARGUED]
Weir Greenblatt Pierce
1339 Chestnut Street
The Widener Building, Suite 500
Philadelphia, PA 19107

  *Counsel for Appellant*

Rose E. McHugh, Esq.
Mark C. Walz, Esq. [ARGUED]
Sweet Stevens Katz & Williams
331 E Butler Avenue
P.O. Box 5069
New Britain, PA 18901

  *Counsel for Appellee*

_____

OPINION OF THE COURT
_____


GREENAWAY, JR., *Circuit Judge*.

Q.T., E.E., and F.P. appeal from the District Court's order granting the Pottsgrove School District's ("Pottsgrove") Motion for Judgment on the Administrative Record, in an action brought under the Individuals with Disabilities Education Act ("IDEA"). Appellants argue that the District Court erred by holding that Q.T. does not qualify as H.P.-B.'s parent for purposes of the IDEA, and thus that Q.T. is unable to file a due process complaint on H.P.-B.'s behalf. We agree. For the following reasons, we will reverse and remand for proceedings consistent with this opinion.

## I. BACKGROUND
### a. The Individuals with Disabilities Education Act

In 1975, Congress passed the Education for All Handicapped Children Act—now known as the Individuals with Disabilities Education Act. The IDEA provides federal funding for special-education programs in state schools for students with disabilities. 20 U.S.C. § 1412(a)(3)(A). The IDEA requires that "state[s] receiving federal educational funding must provide children within that state a 'free appropriate public education' (FAPE)." *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 65 (3d Cir. 2010) (quoting 20 U.S.C. § 1412(a)(1)(A). Further, "[a] State covered by the IDEA must provide a disabled child with such special education and related services 'in conformity with the [child's]

individualized education program,' or IEP." *Endrew F. ex rel. Joseph F. v Douglas Cnty. Sch. Dist.*, 580 U.S. 386, 390-91 (2017) (alteration in original) (quoting 20 U.S.C. § 1401(9)(D)).

There are congressionally mandated administrative procedural safeguards to resolve disagreements between parents and school districts over the proper IEP for a child or other FAPE-related disputes. *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 368–69 (1985). Once employed, these mechanisms conclude in a due process hearing before a local hearing officer who determines whether a school district has met the IDEA's requirements. *See* 20 U.S.C. § 1415(f)(3)(E)(i).

## b.     Facts

Student H.P.-B. resides with her adult cousin Q.T. within the geographical boundaries of Pottsgrove. H.P.-B. enrolled in Pottsgrove during the 2014–2015 school year. Q.T. does not have legal custody of H.P-B—an August 2008 order grants primary physical and legal custody to H.P.-B.'s grandmother, E.E., a resident of the School District of Philadelphia. The order does not prejudice the rights of H.P.-B.'s biological parents, including her father, F.P., who lives within the geographical boundaries of the neighboring Pottstown School District.

While not having legal custody of H.P.-B., Q.T. makes educational decisions on behalf of H.P.-B. In 2018, Q.T. requested that Pottsgrove conduct a disability evaluation for H.P.-B. Q.T. asserts that neither E.E. nor F.P. participated in this process. Following Q.T.'s consent to a "Permission to Evaluate" ("PTE"), Pottsgrove conducted the evaluation.

4

Pottsgrove determined that H.P.-B. did not have a disability and was ineligible for services under the IDEA.

Q.T. then requested an Independent Educational Evaluation ("IEE"), which Pottsgrove approved, issuing a Section 504 Annual Notice Letter for Permission to Evaluate in March 2019. The IEE was completed in August 2019. The evaluator found that H.P.-B. appeared to qualify for special education and related services as a student with an "Other Health Impairment." Pottsgrove issued Q.T. a new PTE in September 2019, and another evaluation was issued in December 2019. The Evaluation concluded that while H.P.-B. had a disability, she was not eligible for services under the IDEA.

In January 2020, the District sent Q.T. an "Invitation to Participate in Meeting" pursuant to Section 504 of the Rehabilitation Act of 1973.[1] In the February 2020 meeting, Pottsgrove proposed implementing a Section 504 plan instead of an IEP. Q.T. did not accept the proposal.

c. **Procedural History**

In March 2020, Q.T. filed an IDEA due process complaint on H.P.-B's behalf. Q.T. alleged that Pottsgrove denied H.P.-B a FAPE. Q.T. claimed that Pottsgrove's proposed Section 504 plan would only formalize informal accommodations that were not helping H.P.-B. Q.T. requested

---

[1] A Section 504 plan, arising under Section 504 of the Rehabilitation Act of 1973, seeks to ensure that a child with a disability has the same access to educational services as children without disabilities. 29 U.S.C. § 794.

that Pottsgrove provide an IEP for H.P.-B and compensatory education to remediate the District's alleged failures to provide H.P.-B with a proper education. Pottsgrove moved to dismiss the complaint. It claimed that Q.T. did not qualify as H.P.-B's parent under the IDEA and that, consequently, Q.T. lacked standing to bring the complaint on H.P.-B's behalf.[2]

The Pennsylvania Due Process Hearing Officer ("Hearing Officer") held that Q.T. did not qualify as a "parent" under the IDEA. The Hearing Officer made this determination based on the court order granting E.E. physical and legal custody of H.P.-B. and his reading of 34 C.F.R. § 300.30(b)(2).

Following the decision of the Hearing Officer, Q.T., along with E.E. and F.P., sued Pottsgrove in District Court, alleging Q.T. was H.P.-B's parent for purposes of the IDEA. They claimed that the Hearing Officer erred in dismissing Q.T.'s due process complaint and that Pottsgrove was estopped from asserting that Q.T. is not H.P.-B.'s parent because it has long treated Q.T. as H.P.-B's parent for educational purposes. In the alternative, they asserted the Hearing Officer erred in dismissing the due process complaint, rather than substituting either E.E. or F.P. as H.P.-B.'s parent. Pottsgrove moved for Judgment on the Administrative Record.

The District Court granted Pottsgrove's motion. The District Court noted that "[t]he Hearing Officer's decision was based on the plain text of a federal regulation," i.e., C.F.R. 34

---

[2] Pottsgrove also claimed that it was not required to provide H.P.-B. with a FAPE as H.P.-B. did not live in the Pottsgrove School District. This argument was rejected by the IDEA hearing officer.

§ 300.30(b)(2). App. 3. It found that there was no dispute that a judicial order had granted E.E. physical custody of H.P.-B. After determining that the regulation was entitled to *Chevron* deference, the District Court held that a straightforward application of C.F.R. 34 § 300.30 (b)(2) "dictates that Q.T. does not qualify as H.P.-B.'s 'parent' for purposes of the IDEA." *Id.*

Q.T., E.E., and F.P. timely appealed.

## II. DISCUSSION
### a. Jurisdiction and Standard of Review

The District Court had jurisdiction to review the decision of the hearing officer pursuant to 20 U.S.C. § 1415(i)(3)(A) and 28 U.S.C. § 1331. We have jurisdiction to review the District Court's final order pursuant to 28 U.S.C. § 1291. We exercise plenary review of the District Court's legal conclusions. *See Lauren W. ex. rel Jean W. v. DeFlaminis*, 480 F.3d 259, 266 (3d Cir. 2007).

In reviewing a challenge to an administrative decision brought under the IDEA, a district court applies a "modified de novo" review. *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 734 (3d Cir. 2009). Under this standard, "a district court gives 'due weight' and deference to the findings in the administrative proceedings." *Id.* (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)). "Factual findings from the administrative proceedings are to be considered prima facie correct," and if the reviewing court does not adhere to those findings, it is 'obliged to explain why.'" *W. Chester*, 585 F.3d at 734 (citation omitted). "We, in turn, review the District Court's factual findings for clear error." *DeFlaminis*, 480 F.3d at 266.

7

### b. Q.T. Qualifies as a Parent for Purposes of the IDEA

Q.T.'s argument presents an issue of first impression in the circuit and requires us to determine who has the authority to act as the "parent" for purposes of the IDEA.

To begin with, we must determine whether a *Chevron* analysis is required here. We must ask whether "Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). "If we can discern congressional intent using the plain text and traditional tools of statutory construction, our inquiry ends: we give effect to Congress's intent." *Cazun v. Att'y Gen.*, 856 F.3d 249, 255 (3d Cir. 2017). However, if the "statute is silent or ambiguous with respect to the specific issue," then we consider whether the Department of Education's ("DOE") regulation embodies a "permissible construction of the statute." *Chevron*, 467 U.S. at 843.

We begin our analysis by examining the plain text of the statute. *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277, 283 (2011). The statute provides:

The term "parent" means-

**(A)** a natural, adoptive, or foster parent of a child (unless a foster parent is prohibited by State law from serving as a parent);

**(B)** a guardian (but not the State if the child is a ward of the State);

**(C)** *an individual acting in the place of a natural or adoptive parent (including a grandparent, stepparent, or other relative) with whom the*

8

*child lives, or an individual who is legally responsible for the child's welfare*; or

**(D)** except as used in sections 1415(b)(2) and 1439(a)(5) of this title, an individual assigned under either of those sections to be a surrogate parent.

20 U.S.C. § 1401(23) (emphasis added).

As both parties note, the statute defines "parent" broadly. Q.T. certainly falls within the third definition of parent, "an individual acting in the place of a natural or adoptive parent . . . or other relative . . . with whom the child lives." 20 U.S.C. § 1401(23)(C). The text of the statute does indicate an unambiguous congressional intent to qualify multiple persons as parents for purposes of the IDEA. Congress has spoken to the "precise question" at issue. *Chevron*, 467 U.S. at 842.[3] Thus our *Chevron* analysis ends here.

---

[3] We recognize that Pottsgrove contends that 34 C.F.R. § 300.30(b) strips Q.T. of her statutory authority to act as H.P.-B.'s parent. The regulation provides:

> (b)(1) Except as provided in paragraph (b)(2) of this section, the biological or adoptive parent, when attempting to act as the parent under this part and when more than one party is qualified under paragraph (a) of this section to act as a parent, must be presumed to be the parent for purposes of this section unless the biological or

There is ample evidence in the record that Q.T. was acting in the place of H.P.-B.'s natural parent, satisfying the third definition of "parent." The record shows that Q.T. submitted sworn statements stating that H.P.-B. lived with Q.T. during the 2016–2017 and 2017-2018 academic years. In these sworn statements, Q.T. affirmed that she was supporting H.P.-B., assumed all personal obligations related to school requirements for H.P.-B., and intended to keep and support H.P.-B. continuously, and not merely through the school year. Q.T. receives Supplement Nutrition Assistance Program

> adoptive parent does not have legal authority to make educational decisions for the child.
>
> (2) If a judicial decree or order identifies a specific person or persons under paragraphs (a)(1) through (4) of this section to act as the "parent" of a child or to make educational decisions on behalf of a child, then such person or persons shall be determined to be the "parent" for purposes of this section.

34 C.F.R. § 300.30(b). Pottsgrove points to a judicial order granting E.E. legal custody of H.P.-B. and argues that, under a system of ordering, E.E. qualifies as H.P.-B.'s parent. Q.T. contests this interpretation and argues that § 300.30(b) only applies as "a tiebreaker when multiple qualified 'parents' are competing with each other to act on behalf of the same child." Appellant's Br. at 17. However, we need not resolve this conflict as it is not the "precise question" at issue—neither E.E. nor F.P. contest Q.T.'s authority to act as a parent for purposes of the IDEA. *Chevron*, 467 U.S. at 842.

payments on H.P.-B.'s behalf and H.P.-B. is listed on Q.T.'s Department of Housing and Urban Development paperwork. Accordingly, Q.T. qualifies as a parent for purposes of the IDEA as the individual with whom H.P.-B. lives and who is legally responsible for H.P.-B.'s welfare. *See* 20 U.S.C. § 1401(23)(c).

## III. CONCLUSION

In sum, the District Court erred in finding that Q.T. did not qualify as H.P.-B.'s parent and thus lacked standing to file a due process complaint on H.P.-B.'s behalf. We will reverse the District Court's decision and remand with instructions to vacate the hearing officer's order dismissing Q.T.'s due process complaint.