BLD-231                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1933
_____

SHAKUR D. GANNAWAY,
                                        Appellant

v.

BERKS COUNTY PRISON; QUIGLEY CHIEF DEPUTY WARDEN; BROWN AND
BERGIN DEPUTY WARDENS; WARDEN GEORGE WAGNER; JESSICA VERGER;
LT. CASTRO; SGT. RINGLER; VANVILLA, Hearing Officer; CO CUNNINGHAM;
CO WILT; CO LABATE; CO FERNANDEZ; CO SPOTTS; CO WILLIAMSON
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5:09-cv-04501)
District Judge:  Honorable Eduardo C. Robreno
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
July 8, 2011

Before:  SLOVITER, JORDAN and GREENAWAY, JR., Circuit Judges

(Opinion filed  July 18, 2011 )
_____

OPINION
_____

PER CURIAM

1

Proceeding pro se and in forma pauperis, Shakur Gannaway appeals orders of the District Court granting summary judgment in favor of the defendants and denying his motions for appointment of counsel. We will affirm.

I.

Gannaway's civil rights complaint arose from a period of detention in the Berks County Jail (BCJ),[1] where he was incarcerated before trial on charges relating to a May 2009 armed robbery, and also pursuant to a probation/parole detainer attached to an earlier offense. Written in a discursive, stream-of-consciousness fashion, the complaint assailed a series of injustices perpetrated by the allegedly racist and abusive staff of BCJ—outrages that Gannaway likened to "modern-day slavery." The offenses were legion, and included: retaliating for filing grievances, committing racist acts, removing his mattress from his cell, "starving" him during the Muslim religious holiday of Ramadan, instituting a "Nutraloaf" diet (which made him sick and interfered with his ability to swallow medicine), forcing him to occupy a cell with a suspected homosexual, overpricing commissary items, and depriving him of medical treatment. Gannaway later amended his complaint, elaborating upon his retaliation complaints, articulating harassment by various guards, and describing the theft of funds from his inmate account.

The District Court ordered Gannaway deposed; following the deposition, the defendants moved for summary judgment. The District Court granted the motion, finding

---

[1] The BCJ was formerly known as the Berks County Prison.

"that [Gannaway]'s claims [we]re either legally insufficient or unsupported by the record." Gannaway v. Berks Cnty. Prison, No. 09-4501, 2011 U.S. Dist. LEXIS 35047, at *7 (E.D. Pa. Mar. 29, 2011).

Gannaway appealed. He has twice moved for the appointment of counsel.

## II.

Deriving our jurisdiction from 28 U.S.C. § 1291, we exercise plenary review over a District Court's grant of summary judgment. Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011). In reviewing the summary-judgment order, we apply "the same standard that the lower court should have applied." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000); see also Fed. R. Civ. P. 56(a) (summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"). Our review of the facts and the inferences drawn from them must be in the light most favorable to Gannaway, the non-moving party; and as Gannaway is a pro se litigant, his filings are to be liberally construed. Tri-M Grp., LLC v. Sharp, 638 F.3d 406, 415 (3d Cir. 2011); Capogrosso v. Sup. Ct. of N.J., 588 F.3d 180, 184 n.1 (3d Cir. 2009) (per curiam).

Since appointment of counsel to an in forma pauperis plaintiff "is discretionary, . . . we review the district court's decision to deny counsel for an abuse of discretion." Parham v. Johnson, 126 F.3d 454, 457 (3d Cir. 1997). We may summarily affirm on any

ground supported by the record if no substantial question is presented by the appeal. Murray v. Bledsoe, No. 10-4397, ___ F.3d ___, 2011 U.S. App. LEXIS 11702, at \*3 (3d Cir. June 10, 2011); see also Third Cir. L.A.R. 27.4; I.O.P. 10.6.

## III.

In rendering its decision, the District Court observed that Gannaway had not fully exhausted the BCJ's administrative remedy process for at least some of his claims. Despite this, it "review[ed] the majority of these claims as if exhausted." Gannaway, 2011 U.S. Dist. LEXIS 35047 at \*2 n.1 (citing 42 U.S.C. § 1997e(c)(2)). The remainder—those non-exhausted claims that were not resolved by the opinion, such as the "lack of access to the law library, lack of adequate material in the library, lack of sanitary food, and alleged tampering with mail and untimely delivery of mail," id. at \*6—were severed from the complaint and dismissed, with "leave to pursue these claims after exhausting administrative remedies." Id. at \*2 n.1.

We recognize that the style of Gannaway's complaint renders difficult the process of determining proper exhaustion. However, at this late date, it is unlikely that he would be able to exhaust remaining administrative remedies. According to the BCJ handbook, an initial grievance must be filed within 30 days of the grievable incident. BCJ Inmate Handbook § 9.3.6 (2005). The general turnaround time is 15 days, as is the timeframe for filing appeals of adverse decisions. Id. § 9.3.7–3.8. Therefore, in order to simplify our review and definitively address Gannaway's claims, we will analyze them under a

4

summary-judgment framework on the merits.

IV.

A) Disciplinary Segregation Claims

Many of Gannaway's complaints relate to prison policies—specific, written policies, described at length in the prison handbook and in the "Disciplinary and Security Housing Unit" orientation materials—governing confinement in disciplinary segregation. Developed in response to the problem of inmates seeking disciplinary segregation for its benefits (such as single-cell status and delivery of meals), the programs were designed to make residing in the segregation unit less appealing; according to the Warden, they are behavioral modification plans and are not intended to be punitive. Decl. of George A. Wagner. Penalties include a temporary mattress restriction during daylight hours (lifted within seven days if the inmate displays appropriate behavior) and a diet consisting of Nutraloaf.

It was these two aspects of disciplinary confinement that Gannaway attacked most directly. He argued that the deprivation of a mattress exacerbated a prior back injury. Gannaway also claimed that he was rendered physically ill by the Nutraloaf, which he described as unpalatable and poorly prepared, but that "they" refused to give him real food, and he was therefore unable to take his medicine; moreover, he was "entitle[d] to know what he [was] eating."

5

Neither claim has merit under the Eighth or Fourteenth Amendments.[2] Gannaway did not inform prison officials of his difficulty keeping down the Nutraloaf, despite complaining about the indignity of the meal on numerous occasions. He has therefore not shown the requisite deliberate indifference needed to prevail on summary judgment or at trial. Farmer v. Brennan, 511 U.S. 825, 836 (1994); see also LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) ("Because a temporary Nutraloaf diet does not deny 'the minimal civilized measure of life's necessities,' its use falls short of the threshold deprivation necessary to form the basis of an Eighth Amendment violation.") (citations omitted).[3]

Gannaway's spare allegations regarding the unsanitary containers in which the Nutraloaf was provided, as well as its undercooked or overcooked status, also do not state

---

[2] Gannaway was detained in the BCJ both as a pretrial detainee and pursuant to a probation/parole detainer that activated upon his arrest. The record fails to make clear the resolution of that detainer, and case law has not definitively addressed whether a prisoner awaiting a hearing on a detainer falls under the protection of the Eighth or Fourteenth Amendments. See Palmer v. Marion Cnty., 327 F.3d 588, 592–93 (7th Cir. 2003); see also Williams v. Mussomelli, 722 F.2d 1130, 1133 (3d Cir. 1983) ("It is established that pretrial detainees are protected by the due process clause of the fifth and fourteenth amendments, not the cruel and unusual punishment clause of the eighth amendment." (citing Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979))). But we need not definitively decide the issue, either generally or pertaining exclusively to Gannaway's status. The Fourteenth Amendment grants at least as much protection as does the Eighth Amendment. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003). At a bare minimum, then, Gannaway must meet the "deliberate indifference" test of Estelle v. Gamble, 429 U.S. 97, 105 (1976), in order to succeed. Natale, 318 F.3d at 582. As shown repeatedly herein, he failed to do so.

a constitutional injury.  Cf. Hamm v. De Kalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that [prison] food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation.").  And Gannaway failed to highlight his back problems in objecting to the mattress restriction. See Gannaway Dep. 146:4–7.

To the extent that Gannaway raised a facial attack on the validity of the disciplinary unit restrictions as applied to pretrial detainees—who "may not be punished prior to an adjudication of guilt in accordance with due process of law," Wolfish, 441 U.S. at 535—we must decide "whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."  Id. at 538; see also Turner v. Safley, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.").  The restrictions pass muster. They are moderate, limited in duration, and "reward" good behavior—all consonant with the behavioral-modification goals highlighted by the defendants.

B) Religious Restrictions

Gannaway claimed that the BCJ fails to "acknowledge the Ramadan month," and that officials told him he "couldn't practice[] [his] religious belief[s]" as a Muslim.

---

[3] His claims of rapid weight loss, which might otherwise alert officials to the existence of a serious medical issue, are not supported by the record.

Specific incidents he cited included an alleged failure to provide him with suitable fast-breaking food for Ramadan and an episode where he was prevented from attending a religious service, ostensibly for misbehavior.

These claims find no support in the record; indeed, the defendants submitted a Ramadan-fast participant list, to which Gannaway was a signatory. Similarly, there is no evidence that Nutraloaf was an unacceptable food for breaking the fast, or that being deprived attendance at a single service constituted a substantial burden on Gannaway's ability to practice his religion, see Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). Accordingly, Gannaway has failed to meet his burden under the First Amendment's Free Exercise clause or the Religious Land Use and Institutionalized Persons Act. See 42 U.S.C. § 2000cc-2; Washington v. Klem, 497 F.3d 272, 277 (3d Cir. 2007).

C) Strip Search

Gannaway alleged that he was "woken up at 5:45am in the morning" and forced to strip for inspection in the prison gym. During his deposition, he clarified that he was, in fact, wearing his shorts the entire time, and that the search was conducted due to a problem elsewhere on the block. See Gannaway Dep. 218:8–219:8. He also said that the length of time he was standing exacerbated his back injury, causing him some pain, but that the Lieutenant he informed responded "too bad." Id. 220:9; see also id. 218:18–19.

This claim lacks viability under the Fourth, Eighth, or Fourteenth Amendments. Gannaway cannot show that this search was unreasonable, especially in the aftermath of

an actual incident to which authorities were responding. See Florence v. Bd. of Chosen Freeholders, 621 F.3d 296, 311 (3d Cir. 2010), cert. granted, 131 S. Ct. 1816 (2011). Nor has Gannaway met either the subjective or objective prongs required to demonstrate an Eighth or Fourteenth Amendment violation with regard to his back pain, Brennan, 511 U.S. at 834—and, regardless, the record demonstrates that he was on medication for pain throughout the duration of his confinement.

D) Retaliation

Gannaway maintained that his periods in disciplinary confinement, and the misconducts issued against him, were the result of retaliatory harassment. However, he has shown *no* "causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). To the contrary, Gannaway repeatedly violated BCJ policies. See BCJ Inmate Handbook § 2.5 (prohibiting the possession of, and alteration of, items belonging to another); id. § 3.5.2 ("You are required to consume prescription medication in the presence of medical personnel. Staff are permitted to examine your mouth to ensure compliance."); id. § 7.4 (describing various acts of misconduct, including "harassment by communication," encompassing abuse of the grievance and internal-communications processes). Nothing in the record suggests that Gannaway's conduct, assuming arguendo its constitutionality, was a "'substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333 (quoting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S.

9

275, 287 (1977)).[4] Lacking this essential connection, he cannot prevail.

E) Racial Comments

Gannaway contends that he was subjected to racial epithets by guards and other prison personnel. But it is well settled that "[t]he use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution. Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) (citations omitted). As Gannaway has alleged nothing more than verbal harassment (and one occurrence of an undirected racial epithet carved on a cell door by unknown parties), he cannot recover on this claim.

F) Legal Mail

Gannaway claimed that he was denied access to the courts due to limited law-library availability; inadequate materials available therein; and instances of tampering with, delaying, and disrupting his legal mail. He alleged that a habeas petition was denied as untimely due to this inference with his ability to prepare a legal case. Gannaway Dep. 119:19–20; see also Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997).

---

[4] Other "harassment" identified by Gannaway is simply too vague to support constitutional relief. For example, he accused CO Castro of making sexual overtures, but was only able to cite a single incident where Castro requested that Gannaway stand in his cell while the latter was naked—too little to be considered a genuine issue of material fact.

But to prevail on a First Amendment access argument, Gannaway must show the underlying lost claim to have been nonfrivolous. Christopher v. Harbury, 536 U.S. 403, 414–15 (2002). Gannaway's "habeas" petition was filed pro se (despite his having counsel), in state court, during the pendency of his state criminal trial. It does not appear to have been denied on timeliness grounds, and Gannaway has not otherwise shown its merit. Accordingly, his access claim must fail.[5]

To the extent that his legal mail claim is premised on his First Amendment free-speech rights, he has not shown a pattern or practice concerning legal mail that is unrelated to a legitimate penological interest. Jones v. Brown, 461 F.3d 353, 359–60 (3d Cir. 2006). Nor does he point to any prison program or policy that would impinge on his First Amendment right to expression with regard to mail or other communications of a non-legal character. See Nasir v. Morgan, 350 F.3d 366, 376–77 (3d Cir. 2003).

G) Medical Treatment

Gannaway insisted that he received inadequate medical treatment, assailing the qualifications of various BCJ physicians. Gannaway Dep. 321:20–24. But evidence in

---

[5] Moreover, Gannaway made clear in his deposition that he was not denied access to the law library; rather, his time was simply limited in a way that he personally found to be unacceptable, and which compared unfavorably to the policies of other county jails. Gannaway Dep. 187:23–188:4. See Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasizing that prisons must provide tools "that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their

the record demonstrates that he received continuous medical treatment for a variety of ailments, and "mere disagreement as to the proper medical treatment," without more, cannot support a claim of unconstitutional wrongdoing. <u>Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 346 (3d Cir. 1987).

H) <u>Financial Deductions</u>

Gannaway accused the BCJ of taking money from his prison account without his permission and without notice. Inmates have a property interest in funds held in prison accounts, and therefore are entitled to due process with respect to those funds. <u>Reynolds v. Wagner</u>, 128 F.3d 166, 179 (3d Cir. 1997). But all of the deductions about which he complains were explained to him by the BCJ. For example, he didn't "see the relevance" of why he was charged for a disciplinary hearing, Gannaway Dep. 161:21–23, ignoring the clear warning in the prison handbook regarding disciplinary hearing penalties, <u>see</u> BCJ Inmate Handbook § 4.3. Gannaway also fails to realize that many other deductions derive from the filing fees he currently owes this Court (and others) for proceeding in forma pauperis in earlier civil suits. Other complaints involve failure to issue prompt receipts, a claim that is at best ancillary to any actual constitutional harm. The record supports summary judgment in favor of the defendants.

To the extent that Gannaway raised a claim regarding overpriced items in the

---

confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration").

prison commissary, his allegations were entirely conclusory and devoid of factual support and, as such, could not sustain the charge.

## I) Clogged Toilet

To the extent that Gannaway's complaint can be read to assert a constitutional violation in connection with a clogged toilet in his cell, the record shows that the toilet was partly functional; it simply required frequent plunging. Gannaway decided that he no longer wished to plunge the toilet during the period while the BCJ awaited the arrival of an available plumber. The result cannot fairly be attributed to the BCJ.

## J) Destruction of Property

To the extent that Gannaway complained that his property was damaged, confiscated, or destroyed by BCJ employees, he cannot prevail, as adequate state post-deprivation remedies were available. See Hudson v. Palmer, 468 U.S. 517, 533 (1984); Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000).

## K) Conspiracy

Throughout these proceedings, Gannaway has insisted on the conspiratorial nature of the actions taken against him. He termed the prison a "corrupted body," one that "stick[s] together." Gannaway Dep. 176:2–3. "In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right." Ridgewood Bd. of Educ. v. N.E. ex rel.

M.E., 172 F.3d 238, 254 (3d Cir. 1999), superseded by statute on other grounds as stated in P.P. v. West Chester Area Sch. Dist., 585 F.3d 727, 730 (3d Cir. 2009). But "the linchpin for conspiracy is agreement," Bailey v. Bd. of Cnty. Comm'rs, 956 F.2d 1112, 1122 (11th Cir. 1992), and Gannaway has shown no agreement, implicit or otherwise, in connection with the actions he cites.

V.

Since Gannaway's claims were neither complex nor meritorious, the District Court did not abuse its discretion in denying his requests for counsel. See Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993).

VI.

Gannaway's complaint and amended complaint pose challenges to judicial analysis; nevertheless, we are satisfied that we (with the able assistance of the District Court) have identified, entertained, and discussed all of the major issues Gannaway attempted to raise. Having found them wanting, and encountering no substantial issue on appeal, we will summarily affirm. Gannaway's motions for counsel are denied. Id.