HARDIMAN, Circuit Judge,
dissenting.
My disagreement with the majority’s effort to distinguish controlling precedent necessitates this respectful dissent.
I
In Cape Henlopen, the disabled child attended private school for the 2005-06 school year, and under a settlement agreement the school district reimbursed the parents for most of the cost of that schooling. 606 F.3d at 63. During that year, the mother and the school district met to develop an individualized education program (IEP) under which the child would return to the public school the following year. Id. The meeting was cut short due to a scheduling conflict and, after the mother indicated she was unavailable for several weeks, the school district offered *246 to continue the meeting approximately three weeks later, which was five days into the school year. Id. The mother noted a conflict but tentatively agreed to that date. Id.
On the first day of school, before the scheduled date for the continued meeting, the parents “unilaterally chose[] to have [the child] begin classes at” private school. Id. at 64. The next day, the parents filed a due-process request and thereafter refused to attend the scheduled meeting. Id. The state hearing panel and the district court both found against the parents because the school district did not deny the child a free appropriate public education (FAPE) and because the parents had unduly inhibited the school district from providing an IEP. Id. at 64-65. We affirmed, stating:
Although the IEP was not completed in the first meeting, it was the Parents and not the District who delayed the continuation of that meeting until after the start of classes, and ultimately terminated the process by filing a due process request. Like the court in [MM ex rel. DM & EM v. School District of Greenville County, 303 F.3d 523 (4th Cir. 2002) ], we decline to hold that a school district is liable for procedural violations that are thrust upon it by uncooperative parents.
Id. at 69. As the child never enrolled in the public school, there was no “specific evidence of an educational deprivation.” Id. In other words, the parents’ decision to remove their child from the school before a final IEP had been offered deprived this Court of the opportunity to evaluate whether the school district would have provided a FAPE. See id. at 69-70.
The application of Cape Henlopen to the parents’ conduct in this case is straightforward. In both cases, the parents participated in a preliminary IEP meeting regarding the upcoming school year. They also left that initial meeting without resolution or a final IEP proposal, thwarted the district’s attempt to hold an additional meeting,[1] and then turned to litigation.[2]
The majority distinguishes Cape Henlo-pen, correctly identifying that the parents there alleged a procedural violation of the IDEA, whereas here a substantive claim has been brought. In my view, that is a distinction without a difference. To obtain reimbursement, a plaintiff alleging a procedural violation still must show that the school district’s “violation can meaningfully be said to have ‘[i]mpeded the child’s right to a FAPE’ or ‘caused a deprivation of [an] *247 educational benefit.’ ”[3] Id. at 66-68 (alterations in original) (quoting 34 C.F.R. § 300.513(a)(2)). Put more simply, even procedural claims that seek compensatory relief require proof of a substantive violation of the IDEA.
Consequently, it makes little sense to limit Cape Henlopen’s rule to procedural claims. The Cape Henlopen principle— that parents may not recover compensatory education or tuition reimbursement under the IDEA where they have short-circuited the IEP-development process— applies with equal force to procedural and substantive IDEA lawsuits.[4]
The majority’s disagreement arises from its misreading of Cape Henlopen, from which it incorrectly concludes that the parents there impeded the school district from initiating the IEP-development process. In defending its procedure-versus-substance distinction, the majority writes that in Cape Henlopen, “the parents refused to attend meetings or permit [the] testing required” for IEP development. Maj. Typescript at 243 n. 2. In fact, the requisite educational evaluation occurred and the mother attended an initial IEP meeting. 606 F.3d at 63. In addition, the majority asserts that in that case “[n]o mention is made ... of any proposed” IEP or the specifics of the parents’ requested educational supports. Maj. Typescript at 243 n. 2. This reasoning seeks to distinguish Cape Henlopen by assuming the nonexistence of certain facts regarding the details of the IEP-development process simply because they were not included in the opinion. But even in this attempt, the majority misinterprets the case. We noted in Cape Henlopen that the IEP meeting the parents attended “concluded before C.H.’s IEP was finalized.” 606 F.3d at 63. The use of the word “finalized” implies that there was a draft proposal. We can likewise infer that, because the mother attended the IEP meeting but placed her child in private school, the family and the school district failed to reach an agreement regarding the child’s education. In sum, the facts in Cape Henlopen mirror the facts of this case.
Accordingly, I would hold that the District Court properly applied Cape Henlo-pen.
II
A second ground for affirmance exists in this case. The majority interprets the equitable-reduction provision of the IDEA to not allow a denial of the ALJ’s award as applied to the parental conduct at issue here. I see it differently. The IDEA allows a district court to reduce or deny any award, id. at 71, if: (1) the parents failed to reject the school district’s placement and indicate their intent to make a private placement “at the most recent IEP meeting that the parents attended”; (2) they did not provide written notice of their intent to remove the child ten days prior to *248 the removal; or (3) there is a “judicial finding of unreasonableness with respect to actions taken by the parents.” 20 U.S.C. § 1412(a)(10)(C)(iii)(I), (III). There is no question that the parents left the first and only IEP meeting without rejecting the placement. Nor is there any doubt that the parents did not provide the requisite notice. Thus, the denial of the ALJ’s award, like the District Court’s “judicial finding of unreasonableness,” was not an abuse of discretion.
For these reasons, I respectfully dissent.

. The parents in this appeal claim that the District never sought another meeting, (Reply Br. 4-5), but the record indicates otherwise. The District wrote to the parents: "It is [the District’s] firm and consistent desire that we reach agreement on a least restrictive, free appropriate public education for [T.W.] Please contact [the District] so that we may continue to move forward in developing an Individualized Education Plan for [T.W.].” (App.2111.)

. The parents also contend that they filed the due-process petition in order to protect their rights under New Jersey law. Specifically, they claim that under NJ. Admin. Code § 6A:14-2.3(h), the District’s June 29 letter triggered a fifteen-day window after which the District could have implemented the IEP if they had not filed a request for mediation or a due-process hearing. I am unconvinced that New Jersey law allows an IEP to be unilaterally implemented in this way. See N.J. Admin. Code § 6A: 14-2.3(a)(2), (c) (mandating parental consent prior to finalization and adoption of an IEP). But even if it does, Cape Henlopen requires parents to continue the IEP-development process even after availing themselves of procedural safeguards. See Cape Henlopen, 606 F.3d at 72 (“The stay-put provision [in 20 U.S.C. § 1415(j) ] does not ... excuse the Parents, who based their complaint on the absence of an IEP, from continuing to meet with the District to rectify the perceived wrong.”).

. If the plaintiff chooses not to prove substantive harm, he "may only seek injunctive relief for prospective compliance.” Cape Henlopen, 606 F.3d at 66 (citing P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist., 585 F.3d 727, 738 (3d Cir.2009)).

. This principle is useful only where the parents terminate the interactive process while the IEP is in "draft” form, as was the case here and in Cape Henlopen. If the District had set forth a final proposal, or if the District's own obstinacy had caused a breakdown in communication, the parents would have been under no continuing obligation to schedule or attend further meetings. See Cape Henlopen, 606 F.3d at 69 (distinguishing Knable ex rel. Knable v. Bexley City Sch. Dist., 238 F.3d 755 (6th Cir.2001)). Thus, I do not advocate, as the majority suggests I do, that "school districts [can] force parents into perpetual negotiations.” Maj. Typescript at 243 n. 3.